89 So.2d 252 (1956)
Nick SAGONIAS, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida. En Banc.
March 14, 1956.
Rehearing Denied September 8, 1956.
M.H. Jones, Clearwater, and Whitaker Brothers, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and Jos. P. Manners, Asst. Atty. Gen., for appellee.
PER CURIAM.
Appellant was informed against for violation of the lottery laws. From judgment entered on a verdict of guilty he takes this appeal.
Tangible evidence against the appellant consisted of certain currency and slips of paper which were identified as lottery materials. He first contends that this evidence was produced by an unlawful search, and should have been suppressed.
The essential facts leading to the contested search are the following: On November 3, 1951, at about ten o'clock in the morning one Whiddon, a state beverage officer, received information from one Kline, also a beverage officer, that Kline had received information concerning someone handling whiskey upon which the tax had not been paid. Kline told Whiddon that "the story he had gotten" was that the whiskey had been shipped in and unloaded at various places along the coast, and that a car, which he described, would be carrying the whiskey. Kline gave Whiddon two license tag numbers to write down, and said that the car would be carrying either of such numbers and would be driven by "a short fellow" whom he named as the appellant. Whiddon did not know the appellant, and had never seen him. Kline showed Whiddon where the latter should park his car to apprehend the described vehicle. Kline had not disclosed to Whiddon the source of his information.
Acting pursuant to this information, but without a search warrant, Whiddon parked his car on the south side of Courtney Campbell Causeway between Tampa and Clearwater about a mile from the county line dividing Hillsborough and Pinellas Counties, on the Pinellas side. When a car passed bearing one of the two license tag numbers that had been given Whiddon to look for, he followed it across the Causeway into Hillsborough County. Across the county line, he halted this car, which was driven by appellant, by following it and blowing his siren. He then drove past appellant's car and blocked its passage.
*253 From the foregoing it is clear that all of the information possessed by Whiddon at the time he stopped the appellant's car consisted of double hearsay and amounted to nothing more than a "tip". His informant, Kline, did not testify. There was "no probable cause" or "trustworthy information" to justify Whiddon's action. The case, up to this point, therefore falls squarely within the rule of Byrd v. State, Fla., 80 So.2d 694, and the stopping was unlawful.
The State contends, however, that subsequent events amounted to consent on the appellant's part to the search which followed, and to a waiver of his constitutional right to protection from unreasonable searches and seizures. We have, therefore, carefully reviewed the record on this point, which consists exclusively of testimony by the witness Whiddon. We find this testimony to be extremely confused and contradictory, particularly with reference to the sequence of events from the standpoint of time. The following facts, however, are clear: After he had stopped the appellant's car the witness Whiddon "flashed" his badge and announced to the appellant that he was a beverage inspector and that he (Whiddon) had information that appellant was hauling contraband whiskey. Whiddon testified in part, "Yes, I told him I was stopping him. I was going to search for non-tax paid whiskey." Appellant vehemently denied that he had any such whiskey. Appellant then took his own keys from the ignition of the car, unlocked the trunk lid, and lifted it. The trunk was perfectly empty. It may have been that Whiddon's search for contraband whiskey was concluded at this time, for at the hearing on the motion to suppress the evidence Whiddon testified in part as follows:
"Q. When you searched him there and found no non-tax paid liquor, tell the court what happened after that.

"A. Well, I opened the left front door of his car and saw these two or three paper sacks. There was money and what I presumed was lottery tickets in them, mixed up there together." (Emphasis supplied).
After Whiddon detected the presence of the paper sacks, he was able to see the contents by leaning over and looking in them through the tops, which were open. Whiddon then escorted the appellant to a place called the Aero Grill which was some distance away, and they made several telephone calls. He later turned the appellant, car, and contents over to the sheriff.
Whiddon testified that the appellant "consented" to the search, but this under the circumstances was a mere conclusion which Whiddon was not qualified to make. His testimony as to the nature of the consent and the time at which it was given is so vague and inconsistent that it is in our opinion insufficient to support a finding that appellant intended to waive or did waive so significant a constitutional right. The trial judge who entered an order on rehearing of the motion to suppress the evidence found that "the witness [Whiddon] testified that the defendant opened the glove compartment to show him that the only whiskey he had was a small amount contained in a pint or half pint bottle, and that in leaning in the automobile he saw a package containing sacks which were open and in the sacks were tickets and money; that the witness then asked the defendant if he had Bolita to which the witness testified that the defendant replied in the affirmative, whereupon the witness informed the defendant he would have to hold him." The trial judge thereupon concluded that "the search proceeded upon the invitation of the defendant; and therefore the defendant waived his constitutional immunity against unreasonable search inasmuch as he invited the officer to make the investigation."
Whiddon testified, however, that the glove compartment sequence occurred after he had seen the paper sacks on the front seat. At the trial Whiddon testified:
"Q. Was there any search or investigation at any time made in relation to that glove compartment? A. Yes, there was.
"Q. When was that made, Mr. Whiddon? A. That was made after we had made our telephone calls and returned to Mr. Sagonias' car to switch cars. By that, we left my car there, the State car, locked that up and he and I got into his car and then he voluntarily unlocked the glove compartment, he was driving and had the *254 keys, it was his own car, he unlocked the glove compartment of his own car and pulled out either half a pint or a pint bottle of legal whiskey."
While Whiddon was testifying about the glove compartment, the following colloquy took place:
"Q. Well, did he insist on you looking in there? A. Yes.
"Q. Just relate what that conversation was. A. He insisted on me looking in there. All the time he said he was not hauling any whiskey there. He admitted that was Bolita. I asked him if that was Bolita and he said it was * * *"
From the foregoing testimony it is apparent that appellant's voluntary opening of the glove compartment and his alleged admission that the sacks contained Bolita took place simultaneously, and long after Whiddon had taken the appellant into custody. It further appears that there was no connection between the opening of the glove compartment and the discovery of the sacks containing the evidence sought to be suppressed. Indeed, no connection was proved by the State between any voluntary act on the part of the appellant and the activities of the officer in connection with the supposed lottery materials.
The State contends that appellant waived his constitutional right under James v. State, Fla., 80 So.2d 699. The full facts upon which we relied in the James case for waiver do not appear from the opinion, but the original record demonstrates that James, when apprehended, sought to disassociate himself from ownership or knowledge of, or, indeed, any connection with, the truck which was there involved, or its contents. He freely consented to the search which was made. In the instant case, it could be found, on the basis of the equivocal testimony of Whiddon, only that appellant did not actively resist the search for contraband whiskey. True, he voluntarily unlocked the trunk, but this was empty. The clear and convincing character of the evidence of such consent which must in our opinion, appear in the record to support a finding of waiver is absent in this case. See Dunnavant v. State, Fla., 46 So.2d 871. We must conclude that the case is controlled by Byrd v. State, supra, 80 So.2d 694, and that the challenged search must be held unreasonable under the constitutional mandate.
With the view of the case we have taken, it is unnecessary to consider other contentions made by appellant, the principal one of which is that the evidence was insufficient to support his conviction of felony violation of the lottery laws.
Reversed and remanded.
THOMAS, HOBSON and ROBERTS, JJ., and STANLY, Associate Justice, concur.
DREW, C.J., and TERRELL, HOBSON and THORNAL, JJ., agree to judgment of reversal.
TERRELL, Justice.
I agree to the judgment of reversal because I do not think that the venue was properly laid in Pinellas County. If appellant was guilty of possession and transportation of bolita indicia in Pinellas County he was only guilty of a misdemeanor. F.S. (1953) § 849.09 (1) (h, j), F.S.A. If he received and transported money, tally sheets and records showing that he bet on a lottery he was not guilty of a felony. Adams v. State, Fla., 66 So.2d 598.
DREW, C.J., and ROBERTS and THORNAL, JJ., concur.
HOBSON, Justice (concurring in part with opinion by TERRELL, Justice).
I agree with Mr. Justice TERRELL'S view that our judgment must be one of reversal without regard to the validity or invalidity of the challenged search.
*255 Appellant was charged with felony violation of the lottery laws, F.S. § 849.09, F.S.A., in three counts, the first count charging that he did, in Pinellas County, Florida, set up, promote, or conduct a lottery for money, commonly known as bolita, the second count charging that he did, in Pinellas County, Florida, "aid or assist in promoting or conducting a lottery or lottery drawing, commonly known as `bolita', for money, by receiving and taking into his possession and transporting various lottery tickets, pay-off sheets and other papers and money", and the third count charging that he, in Pinellas County, Florida, "was interested in or connected with a lottery or lottery drawing, commonly known as `bolita', for money in that he received, collected, and transported lottery tickets, pay-off sheets and other papers and money". He was convicted on all three counts. He contends, however, that the evidence introduced by the State was insufficient to prove a felony violation of F.S. § 849.09, F.S.A., because the record is wholly barren of evidence to prove such violation in Pinellas County, Florida, as charged. With this contention I agree. The only proof of appellant's activities in Pinellas County consisted of Whiddon's testimony that he followed appellant's automobile for a short distance in that county, and the fact that appellant's car contained currency and lottery tickets. We said in Adams v. State, Fla., 66 So.2d 598, 599:
"The mere fact that [appellants therein] may have received and taken into their possession and transported `money, tally sheets and records showing the betting on said lottery' did not constitute a felony. The aid and assistance in setting up, promoting and conducting a lottery is the crime charged." [Italics in original.]
Thus the most that was proved herein to have taken place in Pinellas County was a misdemeanor, since there is no evidence that any lottery existed in Pinellas County with which appellant could have been connected in any way which would make such connection a felony under F.S. § 849.09, F.S.A. It is fundamental that the venue of the crime charged must not only be alleged in the indictment or information, but the proof must sustain such allegation. Rowe v. State, Fla., 84 So.2d 709, opinion on rehearing granted filed January 18, 1956; Rimes v. State, 101 Fla. 1322, 133 So. 550; McKinnie v. State, 44 Fla. 143, 32 So. 786. The proof of a felony in this case falls short of this requirement.
DREW, C.J., and ROBERTS and THORNAL, JJ., concur.