295 So.2d 133 (1974)
Kathy Denise BAILEY, Appellant,
v.
STATE of Florida, Appellee.
No. 73-316.
District Court of Appeal of Florida, Fourth District.
May 24, 1974.
Rehearings Denied June 17, 1974.
*134 Robert P. Foley and Philip G. Butler, Jr., of Foley & Colton, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Basil S. Diamond, Asst. Atty. Gen., West Palm Beach, for appellee.
MAGER, Judge.
This is an appeal from a judgment of conviction and sentence for possession of marijuana and cocaine. Defendant contends that error occurred in the proceedings below in several respects. Our review of the record in light of defendant's contentions leads us to conclude that defendant has not demonstrated reversible error. Two of the defendant's contentions, however, merit discussion and comment.
The defendant was a passenger in a 1946 Cadillac convertible traveling north on the Florida Turnpike at a very slow rate of speed. A highway trooper observed the *135 car "weaving", followed it for a mile before stopping it at approximately midnight on the night of September 9, 1972, to ascertain why it was being driven in such a manner. The defendant was seated in the front seat between the male driver and another male passenger. The trooper questioned the driver about the weaving on the road and asked for identification. The trooper was advised by the driver that he (driver) was not used to the car and that was the reason why it was weaving.
No arrest for any traffic violation was made as the trooper was apparently satisfied with this explanation. In his testimony before the trial court the trooper stated that "everything checked out" and "I couldn't detect anything, anything on him that could make him weave". The record reflects, however, that the trooper decided to check the identification of the other two passengers (the defendant and the other male passenger). When the trooper walked around to the right side of the car the male passenger got out in order to get his driver's license identification which was in a brief case laying on the back seat. As the passenger alighted from the car the trooper observed a plastic bag "sticking out from under the leg of the white female that was sitting in the middle on the front seat". Upon observing the plastic bag, the trooper "reached in and got the bag and opened it up". The trooper found ashes which had a "strong odor of marijuana". At that point the trooper placed all three subjects under arrest for possession of marijuana and advised them of their rights.
The record below reveals that the trooper further testified that he obtained the permission and consent of the owner and driver of the car to search the car. The record further reflects that the trooper observed a cosmetic bag in the front seat of the car and asked the defendant if it belonged to her; she identified it as her case. The trooper testified that he "asked her about searching it and she said yes". A search of the cosmetic bag reflected that it contained marijuana and cocaine.
Some four months prior to the trial defendant filed a motion to suppress the evidence on the basis that such evidence was illegally seized. At the time of trial the court indicated that it would hear the motion to suppress "during the trial".[1] Defendant suggests that the trial court was obligated ex mero motu to entertain the motion to suppress prior to trial and that the court's failure to do so constitutes reversible error. In any event, defendant further contends that the court erred in failing to grant defendant's motion to suppress.
We readily conclude that there is merit to defendant's motion to suppress some of the evidence seized, but not as to all of the evidence because of the additional element of "consent" as reflected by the testimony in the record below and as will be further amplified. Essentially, defendant contends that the search of the automobile which produced the plastic bag of marijuana (defense exhibit A) was illegal so that the arrest of the defendant based upon this evidence was also illegal; not only should this plastic bag be suppressed but any evidence obtained as a result of the search made incident to this illegal arrest, i.e. items within defendant's cosmetic bag, must also be suppressed as the unlawful fruits of an illegal search.
The constitution does not forbid all searches and seizures but only unreasonable searches and seizures. In order for the warrantless search of the car in question to have been sustained it must have been predicated upon (a) a search incident to a *136 lawful arrest, State v. Sanders, Fla.App. 1970, 239 So.2d 120; State v. Gustafson, Fla. 1972, 258 So.2d 1; and Reis v. State, Fla.App. 1971, 248 So.2d 666; (b) a search based upon probable cause, Sanders, supra; Suiero v. State, Fla.App. 1971, 248 So.2d 219; (c) a search based upon an emergency situation, Webster v. State, Fla.App. 1967, 201 So.2d 789; or (d) a search based upon consent, James v. State, Fla.App. 1969, 223 So.2d 52.
In addition, no "search" occurs and evidence is deemed to have been properly "seized" where it is so placed that it may be seen by an officer who is where he has a right to be, i.e. the so-called plain view doctrine. State v. Ashby, Fla. 1971, 245 So.2d 225; Moore v. Wainwright, Fla. App. 1971, 248 So.2d 262; Boim v. State, Fla.App. 1967, 194 So.2d 313; and Powers v. State, Fla.App. 1973, 271 So.2d 462. Under these latter circumstances such seizure does not constitute a "search".
Adverting to the facts of the case sub judice, it is clear that a "search" occurred when the officer reached into the automobile to seize the plastic bag partially obscured under defendant's foot; such search was not made as an incident to a lawful arrest inasmuch as the facts clearly demonstrate that no arrest occurred based upon a traffic violation, cf. Gustafson, supra; an arrest occurred after the search. The arrest cannot justify the search and, in turn, the search justify the arrest. See Russell v. State, Fla.App. 1972, 266 So.2d 92. Where an arrest is unlawful a subsequent search is unlawful and cannot be made legal by the fruit it produces. 29 Fla.Jur. Search and Seizure, Sec. 19.
The search producing the plastic bag of marijuana (not having been made incident to a lawful arrest) can neither be justified as having been based upon probable cause. As stated in Suiero v. State, supra, 248 So.2d at p. 221:
"`... Probable cause exists where "facts and circumstances within their (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543.'"
The testimony of the trooper unmistakably indicates that after he stopped the car "for weaving" he apparently was satisfied that "everything checked out". He detected no odor of marijuana and offered no testimony whatsoever upon which it might be either gleaned or inferred that he (the officer) believed that an offense had been or was being committed. Probable cause cannot be based on mere suspicion, it must be based on facts known to exist and in this case there was no testimony of any facts known to exist upon which the search of the automobile could be predicated. See Keener v. State, Second District Court of Appeal, 290 So.2d 513, opinion filed February 22, 1974; Hearns v. State, Fla.App. 1972, 262 So.2d 907; cf. F.S. Sec. 933.19, F.S.A.; see also Richardson v. State, First District Court of Appeal, 291 So.2d 253, opinion filed March 14, 1974.
Furthermore, there is no evidence or testimony that would give rise to the type of emergency situation which has been considered to be the exception to the rules governing searches and seizures so as to dispense with the necessity of securing a search warrant because of the circumstances then existing. See Webster v. State, supra.
Nor can the seizure of the plastic bag, which occurred when the officer reached into the automobile, be supported by the so-called "plain view" doctrine inasmuch as the testimony below clearly reveals that whatever was contained in that bag was not "fully disclosed and open to the eye and hand", Boim, supra. Compare with Moore v. Wainwright, supra, and State v. Ashby, supra.
*137 Therefore, as to the plastic bag of marijuana we are of the opinion that under the applicable principles of law applied to the facts and circumstances of this case such plastic bag was the result of an unlawful search and seizure, and the consequent arrest of defendant having been predicated thereon was likewise unlawful.
The problem, however, and one not without some difficulty is as to the status and character of the evidence contained in defendant's cosmetic bag, i.e., marijuana and cocaine. We would have no difficulty in concluding that such evidence should likewise be suppressed had the "search and seizure" of the cosmetic bag been predicated upon the preceding illegal arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
However, the facts in the case sub judice reflect the presence of another element upon which the lawfulness of the search is predicated, i.e. the consent of the defendant. It has been generally recognized that a search which is made pursuant to a consent is not unreasonable and therefore not in violation of state or federal constitutional rights. James v. State, supra. The evidence, however, must reflect a "voluntary" consent and not one that was obtained by the coercion of government agents. See James, supra.
The evidence reflects testimony by the arresting trooper that defendant's consent to the search of her cosmetic bag was given freely and voluntarily; the testimony of the defendant and the defense witnesses, however, suggested that the defendant's consent was produced by coercion. A determination as to the voluntariness of a consent is a question to be determined from the totality of all the circumstances and a question of fact to be determined by the trial court. State v. Hysell, Fla.App. 1973, 281 So.2d 417; Ghelfi v. State, Fla. App. 1969, 229 So.2d 593. Particularly where there is a conflict in testimony, such conflict must be resolved by the trial court which in this instance was in favor of the arresting officer. See Ghelfi v. State, supra.
The difficulty in disposing of the problem of consent lies not with the trial court's determination of voluntariness from a consideration of the totality of the circumstances; but rather the difficulty lies in attempting to assess the impact of an "arrest" and the coercive effect that such an arrest has upon the voluntariness of the consent. Inasmuch as this, too, is a question of fact to be determined by the trial court a strong presumption must be accorded to the trial court's determination.
Florida adheres to the proposition that the fact that a person is under arrest does not in and of itself deprive the consent to a search of the essential free and voluntary quality. Ghelfi v. State, supra; Rinehart v. State, Fla.App. 1959, 114 So.2d 487; see also, Annotation: Validity of Consent to Search Given by One in Custody of Officers, 9 ALR3d 858, et seq. A consent may be free and voluntary even if a person has been "illegally" arrested provided that such consent was not obtained by the exploitation of any prior unlawful actions of the officer. State v. Spanierman, Fla.App. 1972, 267 So.2d 102; see also Slater v. State, Fla. 1956, 90 So.2d 453. A review of the evidence does not reflect that defendant's consent was predicated upon the prior "unlawful" arrest. Compare with Earman v. State, Fla. 1972, 265 So.2d 695. Instead, the testimony of the defendant and the defense witnesses suggested a coerced consent as reflected by the allegation that the trooper stated that he had the right to search without a search warrant and that he could get a search warrant if he wanted to; these representations were at variance with the testimony of the trooper at least insofar as the consent of the defendant was concerned. In other words, the coercion which was disputed was alleged to have been induced by factors other than the prior "illegal" arrest.
*138 As heretofore indicated, the case presented here is an extremely close one; there is, however, evidence in the record to support the determination made by the trial court. An appellate court should not substitute its judgment for that of the trial court where the evidence and all reasonable inferences and deductions capable of being drawn therefrom support the conclusions reached by the trial court. Whether or not consent has been actually given or is simply a manifestation of consent produced by coercion is a question for the trial judge and his determination must be accepted on appeal unless clearly erroneous. James v. State, supra. We cannot conclude, on the basis of the record before this court, that the finding of the trial court was clearly erroneous.
The other contention of the defendant which this court feels is worthy of comment relates to the error of the trial court in failing to entertain defendant's motion to suppress prior to trial. On or about October 2, 1972, defendant, pursuant to Rule 3.190(h), 33 F.S.A., filed a motion to suppress the evidence seized from the vehicle which defendant was occupying alleging, inter alia, that the evidence was obtained "as a result of an unreasonable search and seizure". As heretofore indicated, on November 27, 1972, the defendant made an abortive attempt to call the motion on for hearing (see footnote 1). The service of the motion did not comply with rule 3.060, FRCrP, which provides:
"A copy of any written motion which may not be heard ex parte and a copy of the notice of the hearing thereof, shall be served on the adverse party a reasonable time before the time specified for the hearing."
No further action was taken by the defendant with respect to a hearing on his motion to suppress. Defendant asserts, however, that Rule 3.190(h)(4) creates a duty on the part of the trial judge to call up the motion to be heard prior to trial. We perceive that the defendant has confused the duty and responsibility of the trial court to hear and decide the motion prior to trial with the duty and responsibility of the movant to take affirmative action in calling the motion up for hearing prior to trial.
We interpret the recent decisions in Foster v. State, Fla.App. 1971, 255 So.2d 533, and Thomas v. State, Fla.App. 1973, 272 So.2d 217, as requiring the trial court under Rule 3.190(h) to "hold a hearing on a motion to suppress before the trial begins..." and to "make its ruling on the motion before the trial begins, upon the basis of the evidence adduced at the hearing on the motion". As the court pointed out in Foster, 255 So.2d at p. 535:
"... One of the purposes of this pretrial procedure is obviously to avoid unnecessary trials, and it is in the interests of both the accused and the state to know before the trial begins whether certain articles or testimony concerning them will be allowed to be received in evidence at the trial... ."
While the practice and procedure followed by the trial court in the case sub judice did not comply with the purpose and intent of Rule 3.190(h), as enunciated in Foster, we cannot, under the particular facts and circumstances of this case, conclude that the trial court committed reversible error. The failure of the defendant to properly schedule the motion for hearing prior to trial and the defendant's own acquiescent conduct on the day of the trial created a circumstance analogous to Thomas v. State, supra, and "made impractical the hearing of the motion before the trial". There is no indication in the record that the trial court prevented the defendant from calling the motion up for hearing prior to trial nor does the record reflect any objections by the defendant at the outset of the trial to the action taken by the trial court. See 2 Fla.Jur. Appeals, Sec. 81.
Although we conclude that under the circumstances and facts of this case no reversible *139 error was committed by the court with respect to the hearing and adjudication on the motion to suppress, we wish to emphasize the necessity of adherence to Rule 3.190(h) and the duty of the trial court to establish a practice and procedure of hearing and adjudicating properly filed and scheduled motions to suppress before the trial begins.
Affirmed.
DOWNEY, J., concurs.
WALDEN, J., dissents without opinion.
NOTES
[1] Defendant made an abortive attempt to have the motion heard on November 27, 1972, at 9 A.M.; such abortive attempt is reflected by the fact that the notice of the hearing was not filed until some forty-five minutes after the time the motion was scheduled to be heard. Except for the foregoing, the defendant did not specifically request a hearing between the time the motion was filed nor during the early stages of the trial.