319 So.2d 22 (1975)
Kathy Denise BAILEY, Petitioner,
v.
STATE of Florida, Respondent.
No. 45821.
Supreme Court of Florida.
June 11, 1975.
Rehearing Denied October 17, 1975.
*23 Philip G. Butler, Jr., of Foley & Colton, West Palm Beach, for petitioner.
Robert L. Shevin, Atty. Gen., and Basil S. Diamond, Asst. Atty. Gen., for respondent.
*24 WILLIAMS, Circuit Judge.
By Petition for certiorari, we have for review a decision of the District Court of Appeal, Fourth District, reported at Bailey v. State, Fla.App., 295 So.2d 133. Jurisdiction vests pursuant to Fla. Const. Art. V § 3(b). The decision conflicts with Talavera v. State, (Fla.App. 1966) 186 So.2d 811, Sagonias v. State, (Fla. 1956) 89 So.2d 252, Urquhart v. State, (Fla.App. 1968) 211 So.2d 79, and Earman v. State, (Fla. 1972) 265 So.2d 695.
Petitioner, defendant below, seeks review of the decision of the District Court of Appeal, Fourth District, affirming the trial court's refusal to grant petitioner's motion to suppress all of the physical evidence, and to reverse the conviction.
Defendant was convicted by a jury for possession of marijuana and cocaine, and she appealed.
Up to a point near the end of the incident leading to the arrest of defendant, there is practically no conflict in the testimony of all the witnesses. A Florida Highway Trooper observed a 1946 Cadillac convertible, with the top down, enter the Florida Turnpike at the Stuart entrance. The car contained three persons, all in the front seat; the defendant, a 17 yr. old female, between two males, all with long hair. The trooper began to follow as the car proceeded in a northerly direction. He followed the car for almost three miles. Traffic was fairly light. The car was proceeding at about 45 miles per hour and the trooper testified that the car was weaving to some extent, but, "was not weaving all that bad." In the almost three miles that he followed the car, it neither crossed the lane divider on the inside of the lane nor did it go off the roadway on the outside of the lane. He finally pulled the car over to determine why the car was proceeding in such a manner. After questioning the driver, the trooper was satisfied with the explanation that this particular automobile was new to the driver. The trooper also determined that the driver did not appear under the influence of an alcoholic beverage. He then checked the driver's license of the driver which appeared to be valid. He checked the license plate of the car with his headquarters by radio and determined that it was not reported stolen. The trooper testified that he then walked around to the other side of the car and asked the other two passengers for identification and that the male passenger exited the car to be better able to remove his identification to show to the trooper. The trooper then observed a plastic sandwich bag protruding from under the leg of the defendant who was still seated in the car. He picked up the bag and examined its contents. There were ashes in the bag which he determined by smell were marijuana ashes. He arrested all three persons for possession of marijuana and read them their Fifth Amendment rights. He testified that he received permission to search the car, and that during the search of the car he asked if a certain cosmetic bag belonged to the defendant; that she responded in the affirmative, and gave consent to a search of it. A search of the cosmetic bag revealed some marijuana and cocaine for which the defendant was arrested, prosecuted and convicted.
On the question of consent to search the car and cosmetic bag, there is considerable conflict in the testimony.
At some time prior to trial, defendant filed a motion to suppress the evidence as the result of an illegal search and seizure. There is a dispute as to whether the motion was ever set down by the defense for hearing prior to trial. There was a notice of hearing by defendant of all pending motions but the record does not clearly reflect whether there was any mention of the motion at the time noticed for such hearing. On the day of trial the defense announced ready to proceed on its motions. The Court stated that the motion to suppress would be heard during trial. A jury was selected and the trial commenced. The *25 trial court denied the motion to suppress on the ground that consent had been given for the search. Defendant appealed from the ruling and the subsequent conviction.
The Fourth District Court of Appeal, in Bailey v. State, Fla.App., 295 So.2d 133, held that the seizure by the patrolman of the plastic sandwich bag and its contents was illegal and that those items should have been suppressed, and that the resulting arrest was illegal. However, the court held that the defendant subsequently consented to the search of her cosmetic bag freely and voluntarily so that the illegal contents of her cosmetic bag were admissible in evidence. The Appellate Court also held that the submission to the jury of the contents of the sandwich bag, and testimony concerning the initial arrest, although found to be improper, was not reversible error. Neither the State nor the defendant wholly agree with all the rulings of the Appellate Court. The State, although of course agreeing with the final overall ruling by the Appellate Court affirming the conviction of defendant, nevertheless maintains that the Appellate Court was incorrect in holding that the initial arrest of defendant and the search and seizure of the sandwich bag were illegal and that the contents of that bag should have been suppressed. The defendant's position is that the Appellate Court was correct in ruling that the initial search and seizure was illegal, but disagrees with the ruling of the Appellate Court that nonetheless the subsequent search and seizure was legal because of consent of the defendant, and disagrees with the Appellate Court that the trial court did not commit reversible error by hearing the motion to suppress during the jury trial. Defendant maintains that after the driver of the automobile had been checked out favorably by the trooper, everything following thereafter was improper: (1) that any further detention was illegal; (2) that demanding identification from defendant and other passenger was illegal; (3) that the search of the plastic bag was illegal; (4) that the resulting arrest of the parties was illegal; (5) that the resulting search of the automobile and defendant's cosmetic bag was illegal; (6) that the seizure of the contents of the cosmetic bag and its subsequent use as evidence against the defendant was illegal; (7) that as a result of the aforesaid illegal acts the search and seizure could not be validated by a consent; and (8) that at any rate, a valid consent was not given.
Defendant further cites as error the hearing of the motion to suppress during the trial, rather than before trial.
The State's position is that the checking of the passengers for identification was valid under the Florida, "Stop and Frisk," law, Florida Statute 901.151; that the search and seizure of the plastic sandwich bag was legal by virtue of the, "open view doctrine;" that even if such search and seizure were to be illegal and followed therefore by an illegal arrest, the defendant gave a valid consent to the search of her cosmetic bag, thus validating the search and seizure.
We agree with the Appellate Court on most of its conclusions, but disagree on at least one which is a controlling factor in the final disposition of this case. We agree that the initial search and seizure of the sandwich bag was illegal and that the resulting arrest of all of the car's occupants was illegal. We disagree that the subsequent searches and seizures were legal by consent.
We agree with the Appellate Court that the motion to suppress should have been heard before trial. We ordinarily would have to consider fully whether reversible error resulted, but the point is moot in view of our holding that the search and seizure was illegal and that the motion to suppress should have been granted.
Commencing with the last paragraph on page 135 of the Appellate Court's opinion and proceeding through the first paragraph on page 137 thereof, the opinion *26 sets forth an excellent account of the law of search and seizure relative to automobiles that we cannot improve upon, and hence is accepted by us in its entirety.
Suffice it to say that, as stated by the Appellate Court, except for the disputed question of consent, there could have been no legal search, seizure, arrest and admission into evidence of the physical contents of defendant's cosmetic bag. The question of consent developed only after a series of illegal actions by the arresting officer.
Because of the dangers inherent to our modern vehicular mode of life, there may be justification for the stopping of a vehicle by a patrolman to determine the reason for its unusual operation. In this instance, although no vehicular regulation was being violated, it seemed strange to the officer that the vehicle was proceeding at only 45 miles per hour and was weaving, although not so much as to move out of its lane on one side or the other. Perhaps some of the possibilities occurring to the officer were defective steering mechanism or that the operator was driving under the influence of alcohol or some other drug. At any rate, the officer did stop the car and diligently investigated all suspicious possibilities. He found no evidence that the driver was under the influence of alcohol, and was satisfied with the reason given by the operator for the moderate speed and slight weaving. He also checked the operator's driver's license and evidence of ownership, both of which appeared valid. He next checked by radio and found that the vehicle was not listed as stolen.
At this point the officer decided to check out the passengers. Also at this point there is no doubt that he had no right to check them. As candidly stated by the officer, there were at that time no circumstances which reasonably indicated that either of the passengers had committed, was committing, or was about to commit a violation of the criminal laws of the State, County or any municipality. Therefore, there is no validity to the State's reliance upon the, "Stop and Frisk," law, Florida Statute 901.151. However, even if, arguendo, the officer could legally require satisfactory identification from the passengers, what followed was illegal. Accepting the officer's statement that defendant's male co-passenger exited the car willingly (defendant testified otherwise), the next occurrence in sequence is that the officer saw a plastic sandwich bag protruding from beneath the leg of defendant. The officer picked up the bag, opened it, inspected the contents by sight and smell, and thereby found the contents to be marijuana ashes. He thereupon arrested all three occupants of the car. The Appellate Court correctly held that the seizure and search of the bag was illegal and that therefore the subsequent arrests were illegal.
The circumstances of the initial detention in this case are remarkably similar to those in Brown v. State, 62 So.2d 348 (Fla. 1952), in which this court found that such a search and seizure was an unreasonable violation of constitutional rights. However, no question of consent arose in that case. This case rests squarely upon the question of consent, which is an exception to the search and seizure requirements. As an exception and as a waiver it must be shown by the State that strong circumstances are present in a case for it to quality as an acceptable alternative to preservation of constitutional rights of citizens.
In this case, the Appellate Court, while conceding that the case presented was an extremely close one, ruled that if there is evidence in the record to support the determination made by the trial court, then an appellate court should not substitute its judgment for that of the trial court. We cannot agree that the question at issue is that simple.
The arresting officer's testimony to establish consent consisted entirely of conclusions, *27 such as; "I asked her about searching it and she said yes." On cross-examination, he was unable to recall whether any of the occupants asked him whether he needed a search warrant to search the car. Defendant testified that when the officer asked about searching the car she had stated that she didn't think it was legal to search the car without a search warrant and that the officer stated something to the effect that his badge gave him the authority to search the car. She also testified that she had objected to the search of her cosmetic bag, and that she asked again about a search warrant, and the officer replied that the finding of marijuana in plain sight gave him the right to search. The driver also testified that he questioned the search of the car; that he never gave consent to search; and that after the initial illegal search and illegal arrest, the officer stated that now he had the right to search the car. One of the backup officers was called as a witness for the State. His testimony corroborating the arresting officer on consent by defendant to search was also general and a bare conclusion:
"PROSECUTOR: `Did he ask her for consent to search it?'
"TROOPER GORDON: `Yes.'"
However, significantly, this officer testified that there was inquiry from one or more of the occupants concerning a search without a warrant and that the arresting officer had answered that he could get a search warrant and then search, and that then consent was forthcoming, again a conclusion on the part of the witness. He also testified that the arresting officer told the occupants that because of evidence he saw in plain view that that gave the right to search and that thereby he could get a search warrant issued, "so then they gave him permission." This testimony in itself is extremely damaging to the State's position on consent and in fact, corroborates to a great degree the testimony of defendant and her witness.
Mere conclusions of an officer are insufficient to establish a valid consent. Officers are not qualified to make such a conclusion. To support a finding of consent, evidence of such consent to search of vehicle without warrant must be clear and convincing. Sagonias v. State (Fla. 1956), 89 So.2d 252.
"A distinction is recognized * * * between submission to the apparent authority of an officer and unqualified consent. Mere acquiescence in a search is not necessarily a waiver of a valid search warrant. Rather, for an occupant to waive his rights, it must clearly appear that he voluntarily permitted or expressly invited and agreed to the search, * * *."
Talavera v. State (Fla.App. 1966), 186 So.2d 811.
It is our ruling that the circumstances in the case at issue fall far short of the standards set in the foregoing cases.
Notwithstanding anything stated in those cases which might seem to require the State to prove knowledge of the right before a defendant could give a valid consent, we do not find such to be a requirement in itself. On the other hand, knowledge or lack of knowledge is a factor which may not be ignored but should be considered along with all other factors. Othen v. State, (Fla.App. 1974) 300 So.2d 732; Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Defendant was not under arrest in either of those cases.
Likewise, we do not unequivocally state that there are no instances in which a valid consent can be given after an illegal arrest.
We agree with the Appellate Court that voluntariness of consent is to be determined from a consideration of the totality of the circumstances. Ghelfi v. State, (Fla.App. 1969) 229 So.2d 593. There may be a few rare instances in *28 which a valid consent could be made after an illegal arrest, provided that circumstances were so strong, clear and convincing as to remove any doubt of a truly voluntary waiver. However, ordinarily consent given after an illegal arrest will not lose its unconstitutional taint. Urquhart v. State (Fla.App. 1968), 211 So.2d 79; Earman v. State, (Fla. 1972) 265 So.2d 695. In the Urquhart case it was ruled that a person would not be considered to have given voluntary consent to police officers' search of home where at time of statement occupant did not know that officers were violating law in invading her home or that defendant's arrest in her home was illegal. In Earman v. State, supra, this Court approved the holding of the Urquhart case.
The Appellate Court held that a consent may be free and voluntary even if a person has been illegally arrested, provided that such consent was not obtained by the exploitation of any unlawful action of the officers, citing State v. Spanierman, (Fla. App. 1972) 267 So.2d 102. However, in the Spanierman case, the defendant was not actually under arrest. In none of the cases cited by the Appellate Court or by State on this point was the defendant actually under formal arrest illegally at the time consent was given, although under some form of investigative detention. Actually, when it has been established that there have been serious illegal actions by police officers prior to an alleged consent having been given by a person, how can any court determine whether or not the consent was obtained by exploitation of such illegal actions? In many instances, the exploitation is accomplished with the performing of the actions. This would be particularly true of an actual, formal arrest, after which the arrested persons could assume that they are subject to commands or suggestions of the officers. A finding of valid consent must be in accordance with human experience. Talavera v. State, supra.
The Appellate Court discussed the conflicting testimony of the arresting officer and the defendant on the question of consent and concluded that the trier of fact can exclude the testimony of the defendant and base its findings solely on the arresting officer's testimony. This is not necessarily true were the fact to be proved, that is: a waiver of constitutional right, must be by clear and convincing proof. In this case, even if the only testimony was that of the arresting officer and defendant, it is doubtful whether a valid consent could have been established, under the circumstances. But there was additional evidence. The driver of the car and another officer testified. The Appellate Court did not even mention in this regard the fact that the other officer had corroborated to some extent the defendant's testimony and that of her witness, concerning the conversation before the searches.
Under all of the circumstances of this case we hold that the defendant's motion to suppress should have been granted and on that ground we must reverse the order of affirmance of the Fourth District Court of Appeal.
In view of the foregoing holding, it is not necessary to consider fully the second point on appeal, namely: whether the conviction should have been reversed because of the failure of the trial court to have heard the motion to suppress prior to trial. We agree with the Appellate Court that the trial court should have heard and ruled upon the motion to suppress prior to the trial. It is unnecessary for us to decide whether reversible error was thereby caused such as was held in Foster v. State, (Fla.App. 1971) 255 So.2d 533. We only add to the opinion of the Appellate Court that it is advantageous to the State as well as defense for the motion to suppress to be heard before jeopardy attaches by swearing of the jury after voir dire. Whether the motion is heard at some date prior to the trial date, or whether it is heard on the trial date but before commencement of trial, is a matter of local practice and of convenience to the court, parties and witnesses. *29 If the motion is heard upon the day of the trial, the witnesses are only subpoenaed once. If the motion is heard some time prior to trial and ruled upon, the State and defense have more time to decide upon their trial tactics, such as a decision by the defense as to whether to plead guilty, waive jury, or go to jury trial, and a decision by the State, if the ruling on the motion is adverse to the State, whether to appeal the ruling of the court.
On the basis of our holding that the evidence was gained by an illegal search and seizure, and that the motion to suppress should have been granted, the decision of the Fourth District Court of Appeal is quashed and the cause remanded for disposition not inconsistent herewith.
ADKINS, C.J., ROBERTS, McCAIN, OVERTON and ENGLAND, JJ. and CHAPPELL, Circuit Judge, concur.