363 So.2d 1102 (1978)
STATE of Florida, Appellant,
v.
Teddy Kirk PRICE, Appellee.
No. 78-161.
District Court of Appeal of Florida, Second District.
September 27, 1978.
Rehearing Denied November 2, 1978.
Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie King, Asst. Atty. Gen., Tampa, for appellant.
Jack O. Johnson, Public Defender, and Thomas A. McDonald and P. Douglas Brinkmeyer, Asst. Public Defenders, Bartow, for appellee.
*1103 OTT, Judge.
The lower court entered an order suppressing marijuana seized as a result of a vehicle search. We reverse.
While on routine patrol at about 6:30 p.m. a policeman observed a lone vehicle with four occupants in a stopped position off the street and near the rear entrance to a lounge. The lounge was open for business and darkness was falling. The vehicle was not in a regular parking position and its engine was running. The four occupants remained in the vehicle for some period of observation by the officer.
There had been several automobile burglaries in the area. Under the circumstances the policeman decided to approach the vehicle and make sure of its right to be there. As he approached the passenger side, he observed the defendant move to conceal something in a jacket that was between the two front bucket seats of the vehicle. At this point, he was immediately adjacent to the lowered passenger window and he detected a strong odor of marijuana smoke emanating therefrom. The policeman thereupon advised all of the occupants of the vehicle of their Miranda rights. After making sure the defendant and other occupants fully understood their rights, he further advised them that he had reason to believe that they had marijuana within the vehicle. The policeman secured the individual consent of each occupant for a search of the vehicle and after each had given his consent, he immediately seized the jacket, opened the flap and found a baggie of marijuana. The defendant admitted the jacket was his and that he had been smoking marijuana just prior to the arrival of the policeman.
Two questions are presented on appeal. The first is whether or not the initial action of the policeman in approaching the vehicle was illegal and therefore tainted the subsequent search; the second is whether or not the consensual search extended to the jacket.
In discussing the first question, we note at the outset that this is not the usual situation of the stop or detention on a public street of a vehicle proceeding in a lawful manner as existed in the situations dealt with by this court in its recent decisions in: McClure v. State, 358 So.2d 1187 (Fla. 2d DCA 1978); Foss v. State, 355 So.2d 225 (Fla. 2d DCA 1978); Lower v. State, 348 So.2d 410 (Fla. 2d DCA 1977); and Lewis v. State, 337 So.2d 1031 (Fla.2d DCA 1976). In the instant situation the policeman observed the vehicle in the parking area of a lounge open for business, but the vehicle was not parked in a normal position. The vehicle was occupied by four persons who gave no evidence of entering the place of business. The vehicle's engine was running. These facts have to be weighed in the light of the policeman's knowledge that the area had been the scene of several automobile burglaries. We know of no case that holds that the policeman's approach of such a vehicle at such a location and under such circumstances for the purpose of determining the identity or purpose of the occupants transgresses any basic constitutional rights. We also think it significant that the policeman had alighted from his cruiser and was walking onto the parking lot toward the vehicle making no overt attempt to stop, detain or hold the vehicle or its occupants. Up to this point we think the officer was doing nothing more than the general public has the right to expect of its policemen in the process of their normal patrol, surveillance and investigatory duties.
It should be noted that this was not the usual "stop and frisk" dealt with by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) or contemplated in Section 901.151(2), Florida Statutes (1977).[1] Under either *1104 of these situations some indication of a well-founded suspicion of criminal activity must exist to justify the subsequent detention and seizure. As pointed out supra, the policeman in the instant case had not stopped or accosted the vehicle or its occupants and no unlawful "intrusion" has been demonstrated either as to the place (the parking lot) or the vehicle and its occupants.
Assuming this case to be governed by the standards for a "founded suspicion" a reversal would be warranted. In the recent case of State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978) our sister court in approving our holding in State v. Bastardo, 347 So.2d 463 (Fla. 2d DCA 1977) discussed the standards for "founded suspicion" under somewhat similar circumstances. Judge (now Justice) Alderman stated in Stevens that "[a] `founded suspicion' is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." 354 So.2d at 1247. Judge Alderman went on to discuss the factors to be evaluated in borderline cases:
There will be borderline cases ... in which reasonable men might differ as to whether the circumstances witnessed by an officer gave an objective foundation to his suspicion. Certain factors might then be evaluated to determine whether they reasonably suggested the suspect's possible commission, existing or imminent, of a crime: The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge. 354 So.2d at 1247.
In Stevens the policeman observed a heavily laden truck pulling away from the vicinity of a city supply and equipment yard. Not only was it unusual for a truck to be there at that hour of the night, but the policeman knew that supplies had been stolen from that same yard recently. The Stevens court held that "there were numerous factors which, when interpreted in the light of [the policeman's] knowledge of the area and of a previous crime, gave foundation to his suspicion... ." 354 So.2d at 1247.
Under the "founded suspicion" standard the observation by the policeman in the instant case of the vehicle on a parking lot but not in the designated parking position or area with its motor running in an area in which there had been recent automobile burglaries would surely justify his suspicion and his approach to the vehicle.
With reference to the specific point of whether or not the policeman could approach the car, two 1975 cases decided by other district courts of appeal are illustrative. In Berry v. State, 316 So.2d 72 (Fla. 1st DCA 1975) the police flushed out of a certain area fifteen to twenty people who were smoking marijuana. They all fled. In that same general area, four persons were sitting in a car parked by the side of the road. A policeman approached the car on the driver's side and asked the driver for identification. The First District Court of Appeal held that the policeman's approach had been valid:
While the officer stated that he had no suspicion that a crime was being committed, ... the totality of all of the circumstances was sufficient to justify the officer in approaching the car and asking the driver for his identification. 316 So.2d at 73.
In Wigfall v. State, 323 So.2d 587 (Fla. 3d DCA 1975) the appellant was sitting in an automobile parked in a parking lot next to a bar. A policeman made a routine check because "there was a high rate of narcotics used in the area and a number of stolen *1105 vehicles had been dropped off in the parking lot." 323 So.2d at 589. The court held that this initial approach of the officer in no way violated the constitutional rights of the appellant.
On this first question we hold that there was nothing improper or illegal in the action of the police officer in approaching the vehicle under the circumstances and in the light of his knowledge. We simply hold that under the circumstances there is nothing illegal or improper in the action of the police officer or his decision to approach the vehicle that taints or vitiates the subsequent search.
With reference to the second question we point out that prior to the time the officer addressed any of the occupants, or issued any directions, commands or requests, that two things occurred: first, he observed the front seat passenger make a furtive movement as if to conceal something under or in a jacket lying between the two front seats; and, second, almost simultaneously the policeman detected the strong odor of marijuana smoke emanating from the open window on the front passenger side. He certainly now had a fully founded suspicion of criminal activity. In the sequence of events that followed, the policeman secured the consent of each of the occupants to a search of the vehicle. The defendant frankly concedes that there was consent to the search of the vehicle, but attacks the actual seizure of the contraband on the ground that the consensual search of the vehicle did not extend to the loose jacket lying between the two front seats of the vehicle. We are not of the opinion that a consensual search of the vehicle is so narrowly circumscribed as to prohibit the officer from seizing or lifting the jacket or otherwise exploring beneath it or in it. Again, we think it appropriate to point out that the objection of the defendant is based purely upon the fact that the object seized or lifted by the policeman was an item of wearing apparel. Such an objection would be untenable had the item been newspapers, duffel bags or any one of a number of other items.
Defendant cites Bailey v. State, 319 So.2d 22 (Fla. 1975) in support of his argument that the permission to search the car did not extend to the jacket. In Bailey, the court pointed out that there had been "serious illegal actions" by the police prior to the giving of the alleged consent. According to the court, this casts serious doubts upon the voluntariness of the consent. The court held that under all the circumstances "it is doubtful whether a valid consent could have been established... ." 319 So.2d at 28.
In contrast to the Bailey situation in which the court noted that "[m]ere conclusions of an officer are insufficient to establish a valid consent", the evidence in the instant case precludes such criticism.
The supreme court in Bailey stated:
[C]onsent ... is an exception to the search and seizure requirements. As an exception and as a waiver it must be shown by the State that strong circumstances are present in a case for it to qualify as an acceptable alternative to preservation of constitutional rights of citizens. 319 So.2d at 26.
In the instant case there was no transgression of the constitutional rights of the defendant. We hold that a proper search was made pursuant to the consent of the occupants of the vehicle.
The order of the lower court suppressing the evidence and discharging the appellee is therefore
REVERSED and set aside and the cause remanded for further proceedings consistent herewith.
SCHEB, Acting C.J., and DANAHY, J., concur.
NOTES
[1] Under our "stop and frisk" law, Section 901.151(2), Florida Statutes (1977), it is provided:

Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
The supreme court in Terry stated:
[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.