402 So.2d 477 (1981)
Timothy NEELY, Appellant,
v.
STATE of Florida, Appellee.
No. 80-2311.
District Court of Appeal of Florida, Second District.
July 31, 1981.
Rehearing Denied August 27, 1981.
*478 Jerry Hill, Public Defender, Bartow and Eula Tuttle Mason, Asst. Public Defender, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
Appellant seeks reversal of his conviction for possession of methaqualone on the ground that the court should have granted his motion to suppress.
Officer Dibella answered a call from a bar on Madeira Beach. When he arrived, the manager stated that a man whom he identified as appellant was refusing to leave and getting too drunk. The manager also reported that he had heard several complaints that appellant was trying to sell Quaaludes and cocaine on the premises. Dibella, accompanied by Officer Gordon, took appellant and the manager outside. Following the usual procedure for situations of this type, the manager told appellant in the presence of the officers that he did not want him on the property, and the officers advised appellant that if he came back on the property he would be arrested for trespass.
Officer Gordon then asked appellant for some identification so that his name could be put on a report and a record check run on him. As appellant presented some identification, Officer Dibella noticed a bulge in his trousers' pocket and asked to look in the pocket. Appellant pulled from the pocket "some keys and some change and other things," but it was evident that there was still something left in the pocket. Dibella pointed at the remaining bulge and asked appellant what it was. Appellant then put his hand in the pocket and pulled out a rolled cellophane baggie containing five white tablets. The officer asked what the pills were, and appellant told him they were Quaaludes for which he had a prescription.
Officer Dibella said that because the bulge in the pocket which he first noticed was a large one, he had thought it might be caused by a gun. However, after appellant had pulled the first items out of his pocket, he knew that the bulge which remained was not caused by a gun or other weapon. He admitted that he had no prior information that appellant might be carrying a gun and that he had no intention at that time of arresting appellant for the sale of drugs. The appellant's version of the incident was somewhat different, but since the court denied the motion to suppress, we need only to consider the facts in the light most favorable to the state.
The court denied appellant's motion to suppress the methaqualone. Appellant entered a plea of nolo contendere reserving his right to appeal the denial of the motion to suppress. The appellant argues that the police conducted an illegal search because they had no basis upon which to look in his pocket. He asserts that if the state contends that the search was consensual, it failed to carry the burden of showing by clear and convincing evidence that the search was freely and voluntarily made. Bailey v. State, 319 So.2d 22 (Fla. 1975).
At the outset, we beg to differ with appellant's contention that the officers had no right whatsoever to look in appellant's pocket. The bulge in the pocket first noticed by the officers looked as if it might have been caused by a gun, and the officers had every right to make a frisk for their own safety under section 901.151, Florida Statutes (1979). Of course, at the point when appellant had removed enough items from his pocket that the officers knew that the remaining bulge could not be a weapon, there was no further right to continue the search. Dunn v. State, 382 So.2d 727 (Fla.2d DCA 1980). The narrow question which remains is whether appellant can complain of having produced the Quaaludes in response to the question about what was left in his pocket. The issue is not so much whether there was a consent to search, but whether there was a search at all. In Lutz v. State, 354 So.2d 141 (Fla. 1st DCA 1978), the court upheld the seizure of a gun which the defendant handed the policeman when he was preparing to conduct a routine pat-down. The court said:

*479 We do not need to reach the question of whether or not there was probable cause to frisk defendant because by all accounts, defendant was never frisked or searched. He voluntarily opened his coat exposing the concealed firearm to view before the officer frisked him. Therefore, probable cause to frisk and consent to search are not viable issues in this case since there was no illegal search, indeed no search at all.
Id. at 142. On the other hand, in Hunt v. State, 371 So.2d 205 (Fla.2d DCA 1979), when the police, who did not have the right to search the defendant at the time, told him to show them what was in his pocket, we held that there had been a search and that the defendant's action of taking marijuana out of his pocket did not constitute consent.
This is a close case. If Officer Dibella had told appellant to empty his pocket of the items which caused the bulge to remain after the keys and change were removed, the seizure would have to be quashed because appellant would have been obliged to follow the officer's directions. See M.J. v. State, 399 So.2d 996 (Fla. 1st DCA 1981). Here, however, appellant went beyond the officers' inquiry about what caused the bulge and spontaneously pulled the methaqualone tablets out of his pocket. Perhaps if he had not been drinking, he would not have done so, but the fact remains that he did it without coercion from the officers. The officers certainly had a right to inquire about what remained in the pocket, and we can only speculate what their action might have been had they received an unsatisfactory response. On these facts, we cannot say that a search took place. Therefore, the methaqualone was properly seized as contraband when appellant brought it into plain view. Smith v. State, 333 So.2d 91 (Fla. 1st DCA 1976).
AFFIRMED.
BOARDMAN, A.C.J., and RYDER, J., concur.