428 So.2d 786 (1983)
J.R.H., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 82-949.
District Court of Appeal of Florida, Second District.
March 30, 1983.
*787 Jerry Hill, Public Defender, Bartow, and Deborah A. Adamson, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
BOARDMAN, Judge.
J.R.H., a child, appeals his adjudication of delinquency and his placement on a suspended commitment program, contending that the trial court erred in denying his motion to suppress. We agree and reverse.
Officer Paul Truesdale, who was on routine patrol, observed appellant and another boy standing next to a moped in an unlighted area of the parking lot of a funeral home at 8:50 p.m. on January 16, 1982. According to Truesdale, there had been recent burglaries in the vicinity, although not at the funeral home itself, and he therefore approached the youths and asked them to identify themselves and explain their presence in the parking lot. They complied, appellant explaining that he owned the moped they had been riding, that the moped had malfunctioned, and that they had pulled into the parking lot to repair it.
Truesdale then patted both boys down for weapons and found a screwdriver in appellant's back pocket. The officer also found a folding buck knife attached to the moped's blinker.
After completing the pat-down, apparently satisfied that the boys no longer posed any danger to him in terms of carrying any concealed weapons, Truesdale "began engaging both subjects in conversation" which he described as "not authoritative at all" while he "was writing the Moped up for a records check." The boys were not free to leave until the records check had been completed, but Truesdale had not advised them of their Miranda rights.
This conversation lasted no more than five minutes. Truesdale then noticed a brown suede satchel, which was about the size of the palm of his hand, attached to appellant's belt and asked appellant what was in it. One of the boys responded, "Okay, you got me," and the satchel and its contents were turned over to Truesdale. The satchel contained five hand-rolled cigarettes which Truesdale suspected contained marijuana, and he thereupon arrested appellant. Only then did he advise appellant of his Miranda rights.
It is clear that at no time prior to disclosure of the marijuana cigarettes did Truesdale have probable cause to arrest or search appellant for any offense. We need not and do not decide whether Truesdale's initial approach, pat-down, and records check on the boys constituted a valid Terry[1] stop. Assuming arguendo that it did, Truesdale went beyond the scope of the Florida Stop and Frisk Law, Section 901.151, Florida Statutes (1981). That section authorizes a law enforcement officer to detain a person "for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense," § 901.151(2), and, if the officer "has probable cause to believe that any person whom he has temporarily detained ... is armed with a dangerous weapon and therefore offers a threat to the safety of the officer," to "search such person ... only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon." § 901.151(5) (emphasis supplied).
In the first place, we believe, based on Truesdale's testimony and the surrounding circumstances, that Truesdale did not have the probable cause required under section 901.151(5), In the Interest of G.T., 387 So.2d 485 (Fla. 4th DCA 1980), to believe, upon noticing the small bag, that it contained a dangerous weapon that would render appellant a threat to his safety. Moreover, in any event, Truesdale's inquiry exceeded the extent of inquiry or search permitted by the statute. At most, Truesdale could have asked appellant if the bag contained a dangerous weapon or could have conducted a *788 pat-down search of the bag. He was not entitled to inquire further than that into the nature of its contents or to conduct a full-scale search of the bag.
Inasmuch as appellant and his companion were being officially detained by Truesdale in his capacity as a law enforcement officer and knew they were not free to leave, and inasmuch as they had not been informed of their Miranda rights, it cannot be seriously argued that the evidence is clear and convincing that the youths' response to his question about the satchel was voluntary. Hunt v. State, 371 So.2d 205 (Fla. 2d DCA 1979); see also Bailey v. State, 319 So.2d 22 (Fla. 1975). Thus the search of the satchel and the seizure of its contents were nonconsensual and illegal, and appellant's motion to suppress should have been granted. Hunt.
Accordingly, the trial court's order adjudicating appellant delinquent is REVERSED and the cause REMANDED with directions to discharge appellant.
OTT, C.J., and CAMPBELL, J., concur.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).