379 So.2d 643 (1980)
Ray Alton NORMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 55172.
Supreme Court of Florida.
January 24, 1980.
*645 Charles G. Brackins of Law Offices of Meldon & Brackins, Gainesville, for petitioner.
Jerry M. Blair, State's Atty., and Donald K. Rudser, Asst. State's Atty., Live Oak, for respondent.
SUNDBERG, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the District Court of Appeal, First District, reported at 362 So.2d 444, which is alleged to be in conflict with Boynton v. State, 64 So.2d 536 (Fla. 1953). Boynton holds that a person's business premises are protected from unreasonable searches and seizures under the Florida Constitution. The issue here is whether the district court erred in affirming the trial court's denial of petitioner's motion to suppress marijuana seized following a warrantless search of a tobacco barn located on a farm leased by petitioner. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
On November 14, 1976, Deputy Sheriff Leyon Beach received information from a confidential informant, whose reliability was not shown, that marijuana belonging to persons other than petitioner was stored in a barn on the outskirts of Live Oak. He relayed this information to Sheriff Leonard. The sheriff knew that the property was owned by a Mrs. Hobgood (who was not one of the persons suspected of owning the marijuana) and that petitioner had farmed the property for the past several months. He also knew that no one was living in the house on the property. Sheriff Leonard testified that at that time he did not have sufficient probable cause to obtain a search warrant.
Sheriff Leonard went to the farm on the evening of November 14, and finding the gate locked, he climbed the fence and walked two hundred and fifty yards to one of several tobacco barns which the confidential informant had identified as containing marijuana. Peering through the window with the aid of a flashlight, the sheriff saw a substance which he identified as marijuana wrapped in tobacco sheets. He then went back to town and ordered the farm staked out to see who would come and go from it.
While on watch at the farm three days later, Deputy Beach observed a truck stop at the gate. The driver, petitioner, opened the gate and drove back among the barns. About fifteen or twenty minutes later the truck, loaded with hay, came out and crossed the highway into a field. Deputy Beach pulled behind the truck and asked petitioner for his driver's license and advised him of his constitutional rights. He told petitioner that Sheriff Leonard had personally seen the marijuana in the barn, and that they knew that petitioner was aware of the marijuana's presence. Beach did not formally arrest petitioner at this time, but he testified that petitioner was not free to leave, and that had Norman resisted, he would have arrested him. Deputy Beach asked petitioner if they could go back to the barn to verify that the marijuana was still there. Petitioner agreed but requested that he first be allowed to unload the hay off the truck. After unloading the hay, petitioner led Deputy Beach to the barn containing the marijuana. Petitioner then agreed to accompany Deputy Beach to the sheriff's office to await Sheriff Leonard's return. After waiting forty-five minutes in the sheriff's office, and after being advised that it would be several hours before the sheriff returned, petitioner was arrested by Beach. Later, representatives of the sheriff's department returned to the farm and confiscated the marijuana.
Petitioner was a resident of Moultrie, Georgia, and was renting and working the Hobgood farm. He told Sheriff Leonard at the jail that he had received an anonymous telephone call warning him not to look in the tobacco barns. Two weeks prior to his arrest, he looked in the barns and saw marijuana.
*646 A jury convicted Ray Norman of possession of more than five grams of cannabis and possession of cannabis with intent to sell. The district court reversed on the second count, finding no direct evidence of an intent to sell. The court affirmed the conviction on the first count, holding that the sheriff's search of the tobacco barn did not violate petitioner's constitutional rights under the Florida and United States Constitutions.
Petitioner maintains that the sheriff's unauthorized entry into the farm and search of the tobacco barn were in violation of his rights under the fourth and fourteenth amendments to the United States Constitution[1] and article 1, section 12 of the Florida Constitution,[2] and therefore the fruits of the search should have been inadmissible in evidence against him. He contends further that the consent given to Deputy Beach to search was tainted and rendered involuntary by the sheriff's initial illegal intrusion. The state counters by arguing that the sheriff's search of the farm was justified under the "open fields" doctrine, but that even assuming the impropriety or that intrusion, petitioner's subsequent consent to search dissipated any constitutional taint. We hold that the sheriff's initial entry and search of the leased premises was unlawful, and that the state has failed to meet its heavy burden of showing that petitioner's consent to search was not fatally infected by the illegal intrusion.
The starting point for our fourth amendment analysis is Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), where the United States Supreme Court held that warrantless searches "are per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions." Id. at 357, 88 S.Ct. at 514 (footnotes omitted). The exceptions are "jealously and carefully drawn," Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), and the burden is upon the state to demonstrate that the procurement of a warrant was not feasible because "the exigencies of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948); Hornblower v. State, 351 So.2d 716, 717 (Fla. 1977). Among the established exceptions to the warrant requirement is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In order to rely upon consent to justify the lawfulness of a search, however, the state has the burden of proving that the consent was in fact freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In Florida, the prosecution must show by clear and convincing evidence that the defendant freely and voluntarily consented to the search. Bailey v. State, 319 So.2d 22 (Fla. 1975); Sagonias v. State, 89 So.2d 252 (Fla. 1956); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978).
The voluntariness vel non of the defendant's consent to search is to be determined from the totality of circumstances. But when consent is obtained after illegal *647 police activity such as an illegal search or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search. Bailey v. State; Earman v. State, 265 So.2d 695 (Fla. 1972); Taylor v. State. See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The consent will be held voluntary only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action. Bailey v. State, 319 So.2d at 28; Sheff v. State, 329 So.2d 270 (Fla. 1976).
Hence our inquiry in this case is twofold. We first must ascertain whether the sheriff's initial intrusion into the farm and tobacco shed violated petitioner's fourth amendment rights; second, if in fact the intrusion was unlawful, it must be determined whether the state, by clear and convincing evidence, has carried its burden of showing an unequivocal break between the prior illegal entry and petitioner's subsequent consent to search.
We begin by concluding that Sheriff Leonard's search of the tobacco barn violated petitioner's constitutional right against unreasonable searches and seizures. Katz v. United States, supra, teaches that the capacity to claim the protection of the fourth amendment depends upon whether a person has a "legitimate" expectation of privacy in the invaded area. That expectation will be recognized as legitimate if a person has exhibited an actual (subjective) expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable. Id., 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring). It seems incontestable that Mr. Norman exhibited a subjective expectation of privacy in the tobacco barn and its contents. He took overt steps to designate his farm and barn as a place not open to the public. The contraband, covered and wrapped in tobacco sheets, was in a closed structure. The farm itself was fenced, and the gate to the fence was kept locked. Equally certain is that petitioner's expectation of privacy in the tobacco shed was reasonable. The barn, as an integral part of petitioner's farming business, enjoyed the same fourth amendment protection as do other business premises. Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). See Raffield v. State, 351 So.2d 945 (Fla. 1977); Boynton v. State, 64 So.2d 536 (Fla. 1953); People v. Weisenberger, 183 Colo. 353, 516 P.2d 1128 (Colo. 1973).
Our conclusion above is bolstered by the fact that petitioner, by virtue of his rental agreement, had a cognizable property right in the invaded area. In a recent decision, Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court noted that "property rights reflect society's explicit recognition of a person's authority to act as he wishes in certain areas, and therefore should be considered in determining whether an individual's expectations of privacy are reasonable." 439 U.S. at 153, 99 S.Ct. at 435 (Powell, J., concurring). Indeed, the majority held that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." 439 U.S. at 144, n. 12, 99 S.Ct. at 431, n. 12.
The district court's reliance below on the "open fields" doctrine as enunciated in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), was misplaced. Hester stands for the unremarkable proposition that the fourth amendment's protection of one's person, house, papers and effects does not extend to the open fields. Whatever the precise parameters of this long-standing but seldom-used doctrine, it certainly does not extend to a warrantless search of a closed structure on fenced property. See United States v. FMC Corp., 428 F. Supp. 615 (W.D.N.Y. 1977).
Having found an initial unconstitutional search, we now must decide whether the state has proven by clear and convincing evidence that petitioner's consent was not a product of the illegal police action. It is our view that the state has failed to carry *648 its burden. Upon first confronting Mr. Norman at the farm, Deputy Beach told him that Sheriff Leonard had personally seen the marijuana, and that they knew that petitioner was aware of its presence. Although petitioner was not formally arrested at this time, the evidence shows that he was at least de facto in custody. Deputy Beach admitted at the hearing on the motion to suppress that petitioner was never free to leave, and that for all intents and purposes, he (petitioner) was arrested. In such a coercive setting, and faced with the awesome knowledge that the sheriff (pursuant to an illegal search) had personally seen the marijuana, petitioner's compliance with Deputy Beach's request to view the marijuana might possibly be deemed acquiescence to authority, but it certainly does not rise to the level of free and voluntary consent to search.
In view of the state's failure to establish a valid exception to the warrant requirement, the search of the barn and the seizure of the contraband violated petitioner's constitutional rights, thus the district court erred in affirming the trial court's denial of petitioner's motion to suppress. Accordingly, the petition for writ of certiorari is granted, the decision of the District Court of Appeal, First District, is quashed, and this cause is remanded to the district court with directions to remand to the trial court for proceedings not inconsistent with this opinion.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and ALDERMAN, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I dissent. The unrefuted circumstances in this cause fail to justify the conclusion reached by the majority that the consent to search was given in such a coercive setting that it did not rise to the level of a voluntary consent to search. I would find the consent voluntarily given and the subsequent search of the barn and seizure of the marijuana to be valid.
NOTES
[1] U.S.Const. Amend. IV:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S.Const. Amend. XIV § 1:
[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[2] Art. 1, § 12, Fla. Const.:

Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.