LILES, WOODIE A. (Retired), Associate Judge.
While it is true we live in an age of great mobility in all phases of life, and even though the State of Florida is in close proximity to the main source of the illegal sale and use of marijuana and other contraband, the times and activity still do not warrant the suspension of the right against illegal searches and seizures contained in the Fourth and Fourteenth Amendments to the U. S. Constitution and Article I, Section 12, of the Florida Constitution, even if we had the authority to do so. However, it does require that we re-examine and redefine reasonableness as it pertains to warrantless searches and seizures.
Defendants Henley and Murray pled nolo contendere in the trial court and reserved the right to appeal the denial of their motions to suppress the contraband which was the basis of the charges against them. They maintain that the State’s seizure of the marijuana was constitutionally impermissible and that the statute under which they were charged in Count I of the information, Section, 893.135, Florida Statutes, violated their federal and state constitutional rights. They also maintained that they had standing to contest the denial of their motions to quash the search.
Henley and Murray entered into an agreement with a confidential informant to supply him a large amount of marijuana. The agreement was made in Pensacola, Es-cambia County, Florida. However, the marijuana was to be delivered to the confidential informant in Gainesville, Florida. The informant was to furnish rental cars to be turned over to the defendants at the Holiday Inn West in Gainesville. Pursuant to the agreement, they proceeded to Gaines-ville where the informant had leased a Pontiac and a Cougar XR-7 automobile on a police charge card. Upon receiving the vehicles, the informant, proposed purchaser of the marijuana, was to wait in the motel’s restaurant while the defendants drove the cars to an undisclosed location to load them with the marijuana. The cars and cargoes would then be delivered to the informant, and he would pay the defendants upon receipt of the contraband. The informant gave the keys to the first car, a Pontiac, to the defendants, who drove it to a secret location where the marijuana bags were wrapped in opaque plastic, sealed by tape, and loaded into the trunk of the automobile. Henley drove the Pontiac, and Murray was a passenger. They returned to the motel parking lot, parked the car and locked it. They went into the restaurant where they met the confidential informant, who gave defendant Henley the keys to the second car, a Cougar. Henley then left in the Cougar to pick up the second load. After waiting a few minutes, Murray and the informant went out to the Pontiac in the parking lot. Murray opened the trunk and showed the informant the contents so that he could “see it was definitely what I said was in there.” However, hidden in Room 123 of the motel were several police officers observing Murray and the informant. Also, the parking lot had been staked out by police hiding in a van, and a third team of policemen monitored the events from an airplane overhead. An *1121 FDLE agent, Larry E. Smith, testified that from his vantage point in Room 123 of the Holiday Inn West he observed plastic bags with tape on them in the trunk of the Pontiac when defendant Murray opened the trunk to show the informant the marijuana. He further testified that based upon his expertise and experience in dealing with marijuana, he concluded that the substance in the trunk was indeed marijuana. Murray and the informant then proceeded to Room 123 where the money was to be paid to the defendant. Upon entering the room, the police forced Murray to lie on the floor and seized the keys to the Pontiac. Shortly after Murray’s arrest, defendant Henley telephoned the motel room. When an unidentified voice answered the phone, Henley asked to speak to Murray. The person who answered the phone told Henley that Murray was outside taking care of things. Murray then called back in about five minutes and told Henley that everything was okay and he should come to the Holiday Inn West. The marijuana in the Cougar was also in the trunk with some of it in the back seat under a blanket. Agent Smith testified that he could observe, through the windshield of the car, plastic bags with tape on them in the back seat. However, this testimony was somewhat contradicted by the defendants, who asserted the marijuana in the back seat was well hidden under the blanket. Henley parked, locked the car and went to Room 123 where he was promptly arrested and relieved of his keys. Police then took the cars and drove the vehicles to Tallahassee where the contents were searched, checked for fingerprints, and processed. At no point was a warrant obtained or sought.
Defendants concede that there was probable cause to support a search. They argue, however, that the warrantless search cannot be justified under any of the pertinent exceptions.
Parenthetically, it appears that at no time during all of these prearranged and detailed plans did it ever occur to any of the multitude of policemen to obtain or seek a search warrant. Certainly, based upon the agreement between the defendants and the informant, there would have been probable cause for one of the officers to have obtained a search warrant for a Pontiac and a Cougar XR-7. Suffice it to say, if this had been done, our task would have been easier, and we admonish the officers that it is always wiser to err on the side of caution.
Even so, it does not follow that this search and seizure was fatally defective. We must first examine in view of Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), defendants’ standing to contest this search and seizure. In Rakas, the United Sates Supreme Court discarded an automatic right of standing in such circumstances and outlined three interests of which one must necessarily be asserted in order to challenge illegal police procedures. Under the facts of this case, those interests would be (1) a property interest in the automobiles, (2) a possessory interest in the automobiles, or (3) an interest in the property seized. 439 U.S. at 148, 99 S.Ct 421, 58 L.Ed.2d at 404. However, in U. S. v. Salvucci, 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980), the Supreme Court said “property rights are neither the beginning nor the end of (the) inquiry.” The true test is whether the illegal search has violated the rights of one who has “a legitimate expectation of privacy in the invaded place.” Id.; Rakas, 439 U.S. at 140, 99 S.Ct. 421, 58 L.Ed.2d 387. In discussing this issue, the Florida Supreme Court has observed:
“That expectation will be recognized as legitimate if a person has exhibited an actual (subjective) expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable.” Norman v. State, 379 So.2d 643, 647 (Fla. 1980). (Cites omitted)
Here, the defendants at best had temporary possession of the two cars which had been rented by the police themselves for the express purpose of affording the defendants a means to transport the marijuana to the prearranged site of the transaction. While the expectation of privacy is illustrated by the defendants’ overt steps to *1122 conceal the marijuana and exclude the public by locking the doors, we are unable to conclude that the expectation of privacy is legitimate. The second step in the process requires a determination that the expectation is one that “society is prepared to recognize as reasonable.” Id. Under the facts as outlined, we must conclude that the defendants’ expectation of privacy was not reasonable. They did not own the cars nor had they leased them. In fact, their use of the cars was for the short-lived purpose of driving them between the Holiday Inn West and the undisclosed location of the hidden contraband and back. By prearrangement they were prepared to hand over the keys to the two cars as soon as the confidential informant paid them. We conclude that the fleeting nature of whatever possessory interest they had in these cars, coupled with their obvious determination to be rid of them at the earliest opportunity, amply reveals that the defendants did not have a reasonable expectation of privacy in the automobiles. Accordingly, defendants had no standing to contest the taking of the automobiles nor the warrantless search of them. Particularly this is true when defendants voluntarily opened the trunk of both the Pontiac and the Cougar for the confidential informant to inspect.
Assuming, arguendo, that the defendants had standing, we still would not conclude that the warrantless search was unreasonable. It could be justified on the testimony of Agent Larry Smith, who from his vantage point observed plastic bags in the Pontiac’s trunk and in the back seat of the Cougar. Coupled with his expertise and prior knowledge of and experience in dealing with marijuana, he was able to conclude, and justifiably so, that the cars contained the contraband. Given this factual predicate, the warrantless search of the autos was permissible. See Albo v. State, 379 So.2d 648, 650 (Fla.1980); Rizzo v. State ex rel. City of Pompano Beach, 396 So.2d 869, (Fla. 4th DCA 1981). See also Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Spinkellink v. State, 313 So.2d 666 (Fla.1975); Pomerantz v. State, 372 So.2d 104 (Fla.3d DCA 1979), cert. denied, app. dism., 386 So.2d 642 (Fla. 1980); Hansen v. State, 385 So.2d 1081 (Fla. 4th DCA 1980).
We also observe that both the Fourteenth Amendment to the U. S. Constitution and Article I, § 12, of the Florida Constitution proscribe only “unreasonable searches and seizures.” While the facts of this case are not completely unique, they do afford this Court the opportunity to make an expression regarding the reasonableness of a war-rantless search. Here, the two cars had been leased by the police. In keeping with the very specific arrangement, the police then gave temporary possession of the cars to the defendants, who promptly delivered them to the parking lot of the Holiday Inn West with the express intention of turning them over to the informant upon receipt of payment. By displaying the contents of the Pontiac’s trunk, defendant Murray sought to prove that the marijuana was definitely what he and his partner had said it was. Given these circumstances, it would appear that to suppress this evidence would be an act of unreasonableness on the part of this Court. The law should be that under the circumstances and facts of this case and similar cases, a warrantless search would be reasonable, and we so hold.
As regards the constitutionality of Section 893.135(l)(a), Florida Statutes, the question has been answered in State v. Benitez, 395 So.2d 514, (Fla.1981), and needs no further comment.
For the foregoing reasons, the denial of defendants’ motions to suppress is
AFFIRMED.
ERVIN, J., and OWEN, WILLIAM C., Jr. (Retired), Associate Judge, concur.