520 So.2d 260 (1988)
Robert Earl DuBOISE, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 67082.
Supreme Court of Florida.
February 4, 1988.
*261 James Marion Moorman, Public Defender, Tenth Judicial Circuit, and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Bartow, for appellant/cross-appellee.
Robert A. Butterworth, Jr., Atty. Gen., and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee/cross-appellant.

AS MODIFIED ON DENIAL OF REHEARING
PER CURIAM.
This cause is before the Court on appeal of a judgment of conviction of capital felony for which a sentence of death was imposed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Robert Earl DuBoise appeals his conviction of first-degree murder, three convictions of violation of probation, and the sentence of death. The state cross-appeals the trial court's order arresting judgment on a jury verdict of guilt of attempted sexual battery. We affirm the convictions, reverse the order arresting judgment, vacate the sentence of death, and remand with instructions to the trial court to impose a sentence of life imprisonment.
DuBoise was indicted for first-degree murder and sexual battery. The body of the victim, Barbara Grams, was found behind a dentist's office in Tampa. The evidence showed that when found, the body of the victim bore a bite mark. The medical examiner testified that the victim died as a result of two blows to the head inflicted with a blunt instrument. The same medical expert also testified that the bite mark occurred roughly around the time of death. The examiner also found semen in the vagina indicating sexual intercourse could have occurred up to seventy-two hours before death.
The police took beeswax impressions of several persons, including appellant, and sent them to a dentist, Dr. Powell, who made stone cast models from them. These stone cast models were forwarded to Dr. Souviron, a dentist specializing in forensic odontology, who compared them to a photograph of the bite mark found on the body. *262 On October 21, 1983, Dr. Souviron called the Tampa police and told them that it was DuBoise who made the bite mark. On October 22, the police brought DuBoise in at 2:00 a.m. and questioned him for about one hour. He was arrested around 5:00 a.m., and, after he started screaming and kicking, he was restrained by ropes and handcuffs and sedated with a tranquilizer called Haldol. At 4:00 that afternoon, the police escorted DuBoise to Dr. Powell's office to have a stone cast model made of his teeth. Although the officers had a search warrant in their possession, they never served it because DuBoise agreed to go willingly. After this second stone cast model was made, it was sent to Dr. Souviron. Dr. Souviron testified at trial that within a reasonable degree of dental certainty DuBoise had bitten the victim.
The other main evidence linking DuBoise to the crime was the testimony of a cellmate, Claude Butler. Mr. Butler stated that DuBoise had told him that he, his brother and a friend had tried robbing a woman of her purse. When she recognized his friend, they abducted her and later, when he was having sex with her, his friend and brother struck her with boards.
The jury found DuBoise guilty of first-degree murder and attempted sexual battery. After hearing the evidence and argument presented at the sentencing phase of the trial, the jury recommended life imprisonment.
The court, finding several aggravating circumstances and no mitigating circumstances, imposed a sentence of death. The court granted DuBoise's motion for arrest of judgment as to the second count of the indictment, vacating the verdict of guilt of attempted sexual battery. DuBoise also filed a motion for new trial on the ground that the bite mark evidence should have been excluded since the arrest was illegal. The court agreed that the arrest was illegal, but denied the motion on the ground that voluntary consent had been given. After a notice of appeal was filed, the court entered its written findings in support of the sentence of death leaving out the aggravating circumstances that DuBoise had previously been convicted of a violent felony.

ISSUES ON APPEAL OF THE CONVICTIONS
DuBoise argues that his convictions should be reversed because the stone cast models of his teeth were products of an illegal arrest and therefore should not have been admitted into evidence. He claims that any consent he gave was tainted and rendered involuntary because of the illegal arrest.
The trial judge found, and the state concedes, that the initial arrest was illegal because it was based on bite mark identifcation made from a beeswax impression. This method of identification was found not to be scientifically reliable so the police needed a second stone cast model of DuBoise's teeth. The state claims that he voluntarily consented to have this stone cast model made.
DuBoise relies on Norman v. State, 379 So.2d 643 (Fla. 1980), and Bailey v. State, 319 So.2d 22 (Fla. 1975). In Norman, this Court said:
The voluntariness vel non of the defendant's consent to search is to be determined from the totality of circumstances. But when consent is obtained after illegal police activity such as an illegal search or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search.
379 So.2d at 646-47. In Bailey v. State, the court said:
There may be a few rare instances in which a valid consent could be made after an illegal arrest, provided that circumstances were so strong, clear and convincing as to remove any doubt of a truly voluntary waiver. However, ordinarily consent given after an illegal arrest will not lose its unconstitutional taint.
319 So.2d at 27-28. He argues this is not one of those rare instances. We disagree and find there was a valid consent here.
There are many factual dissimilarities between this case and Bailey which *263 render the holding in Bailey inapplicable. First, in Bailey, the search was made immediately after the arrest. In this case several hours had elapsed. Second, in Bailey, the arresting officers' testimony consisted entirely of conclusions. Here the detective who took DuBoise to the dentist testified that he obtained a search warrant to have the stone cast model made, but never served it because everything DuBoise did was voluntary. He said that when he explained to DuBoise that they were going to take him to the dentist to get an impression of his teeth, DuBoise replied, "Fine, go ahead and do it. I'll prove to you that I didn't bite the girl. I didn't have anything to do with it." While waiting in the dentist's office DuBoise stated, "I'm glad you're doing it." Finally, the defendant in Bailey testified that she did not give her consent and specifically asked about a search warrant. There is no such conflicting testimony in this case.
Counsel relies heavily upon the fact that DuBoise was administered 10 milligrams of the tranquilizer Haldol at 6:20 a.m., roughly ten hours before he was taken to the dentist's office. However, both the detective and dentist testified that DuBoise did not appear to be under the influence of any drugs and acted calmly and rationally. No evidence was presented concerning the nature or length of the drug's effects. We conclude that the evidence clearly and convincingly supports the trial court's finding that DuBoise had voluntarily consented to have the dental impressions made of his teeth.
DuBoise next argues that it was reversible error to allow his cellmate Claude Butler to recount his statements. He argues that the statements, like the second dental impressions, were a product of an illegal arrest and that he was deprived of his sixth amendment right to counsel because Butler was an agent for the state. See Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). We find the incriminating statements were not a product of DuBoise's illegal arrest. The statements were made several months after appellant was arrested. They were spontaneous utterances, not the product of active questioning. Furthermore, by the time of the statements DuBoise had been validly arrested for violating probation.
We also find that Butler was not acting as a state agent. Upon his arrest, DuBoise was placed in a sixteen-man holding cell in which Butler was already residing. Later some police officers, while questioning Butler about unrelated matters, asked him if he knew anything about DuBoise. When he indicated that all he knew was that DuBoise was in the cell and had talked about a girl, they said to him, "If you hear anything, hear a conversation, call us. See what you can do for us or whatever." They did not ask him to question DuBoise or to take any other affirmative action to obtain information. This is not a case where the police moved an informant into a defendant's cell for the express purpose of questioning the defendant. There is nothing to indicate that the authorities promised Butler any favorable treatment. Several months later when Butler asked DuBoise how things were going, he unburdened himself with his confession. There was no evidence that Butler deliberately attempted to extract a confession from DuBoise. When questioned why he was testifying against DuBoise, Butler explained that he knew DuBoise was not going to say anything against his cohorts and that he did not think he should take the sole rap for the murder. Given these facts, we find that there was no deliberate attempt to deprive DuBoise of his sixth amendment right to counsel. See Dufour v. State, 495 So.2d 154 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987).
Next DuBoise argues that the trial court erred in refusing to rule upon his motion to suppress the evidence until after the trial. He points out that we have held that, when requested, an evidentiary hearing on the voluntariness of a confession must be held before the confession can be submitted to the jury. Land v. State, 293 So.2d 704 (Fla. 1974). DuBoise concludes *264 that the trial court erred by not holding an evidentiary hearing on the voluntariness of his consent before allowing the stone cast model of his teeth and his statements to his cellmate into evidence.
The major distinction between Land and this case is that here DuBoise made no request for a hearing. On the third day of the trial, the trial judge heard arguments from counsel on both sides outside the presence of the jury concerning the motions to suppress certain evidence. At one point the judge suggested that a hearing should be held. However, neither side indicated they wanted one. Even after the trial DuBoise failed to request a hearing on the voluntariness of his consent. We therefore find no reversible error in the trial court's refraining from ruling upon the motions to suppress until after the trial.
Next DuBoise argues that the trial court erred in denying a motion for mistrial based upon the prosecutor's improper remarks during closing argument. This point has not been properly preserved since the motion was made after the jury had been given its instructions and had retired for deliberations. State v. Cumbie, 380 So.2d 1031 (Fla. 1980).
DuBoise also argues that the trial court erred in not granting a mistrial when it was discovered that state's witness Butler was acquainted with one of the jurors. After testifying, Butler notified the bailiff that he thought he recognized one of the jurors. Butler was then questioned outside the presence of the jury about this comment. He explained that he thought he recognized one of the jurors as a person he was acquainted with at a bar he frequented, but could not give the person's name. Each juror was questioned individually and all denied recognizing or knowing any of the witnesses in the case. Given these facts, we find no reversible error in the refusal to grant a motion for mistrial.
The next point on appeal is that DuBoise was deprived of his constitutional right to be tried by an impartial jury because of the exclusion of a prospective juror who was opposed to capital punishment. This very issue has recently been decided against DuBoise's position by the United States Supreme Court in Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).
The state cross appeals the order granting DuBoise's post-trial motion for arrest of judgment. The motion claimed that the second count of the indictment for sexual battery was deficient in that it failed to allege the use of actual physical force. The second count specifically provided:
The Grand Jurors of the County of Hillsborough, State of Florida, charge that ROBERT EARL DUBOISE, between the 18th day of August, 1983, and the 19th day of August, 1983, in the County and State aforesaid, did unlawfully and feloniously commit sexual battery upon BARBARA GRAMS, a person over the age of eleven (11) years, without the consent of the said BARBARA GRAMS, contrary to the form of the statute in such cases made and provided, to-wit: Florida Statute 794.011(3).
In his attempt to sustain the trial court's ruling, DuBoise argues that the failure to include an essential element of the offense, the use of actual physical force, rendered the indictment fundamentally defective for failure to charge a crime, citing State v. Dye, 346 So.2d 538 (Fla. 1977). We find the holding in that case inapplicable to the facts in this case.
In State v. Dye, the defendant filed a pre-trial motion to dismiss the information. In this case DuBoise did not move to quash the indictment before trial, but instead waited until after the trial before filing a motion for arrest of judgment pursuant to Florida Rule of Criminal Procedure 3.610. That rule provides that a motion for arrest of judgment shall not be granted unless the indictment is so defective that it will not support a judgment of conviction. The reason for this provision is to discourage defendants from waiting until after a trial is over before contesting deficiencies in charging documents which could have easily been corrected if they had been pointed out before trial. See Sinclair *265 v. State, 46 So.2d 453 (Fla. 1950); State v. Cadieu, 353 So.2d 150 (Fla. 1st DCA 1977). Hence a charging document which is subject to pre-trial dismissal can nevertheless withstand a post-trial motion for arrest of judgment.
For example, the failure to include an essential element of a crime does not necessarily render an indictment so defective that it will not support a judgment of conviction when the indictment references a specific section of the criminal code which sufficiently details all the elements of the offense. McClamrock v. State, 374 So.2d 1076 (Fla. 2d DCA 1979). In this case the indictment specifically referenced section 794.011(3), Florida Statutes. By referencing section 794.011(3), which specifically defines all the elements of the offense, the indictment placed DuBoise on adequate notice of the crime being charged. Cotton v. State, 395 So.2d 1287 (Fla. 1st DCA 1981). Indeed the trial judge in this case specifically found that DuBoise was not misled or embarrassed in the preparation of his defense. See Fla.R.Crim.P. 3.140(o). We therefore find that the trial court erred in granting the motion to arrest the judgment.

ISSUES ON APPEAL OF THE SENTENCE OF DEATH
After the sentencing hearing the jury recommended life imprisonment. The trial judge refused to abide by the recommendation and imposed a death sentence. The trial court's written findings of fact in support of the sentence of death set forth the following aggravating circumstances: that the murder was committed during the course of a felony, section 921.141(5)(d), Florida Statutes (1983); that the murder was committed to avoid arrest, section 921.141(5)(e); and that the murder was especially heinous, atrocious and cruel, section 921.141(5)(h). The judge found no mitigating circumstances.
DuBoise claims that death is a disproportionate punishment for felony murder and, therefore, that his death sentence violates Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We disagree. We have upheld the death penalty in numerous cases where, as here, the appellant did not actually commit the subject homicide. E.g., Copeland v. Wainwright, 505 So.2d 425 (Fla. 1987); Jackson v. State, 502 So.2d 409 (Fla. 1986); Cave v. State, 476 So.2d 180 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); State v. White, 470 So.2d 1377 (Fla. 1985); Bush v. State, 461 So.2d 936 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 83 L.Ed.2d 717, 105 S.Ct. 608 (1984); Ruffin v. State, 420 So.2d 591 (Fla. 1982). Moreover, the United States Supreme Court recently clarified Enmund in Tison v. Arizona, ___ U.S. ___, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).
In Tison the Court stated that Enmund covered two types of cases that occur at opposite ends of the felony-murder spectrum, i.e., "the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state" and "the felony murderer who actually killed, attempted to kill, or intended to kill." 107 S.Ct. at 1684. The Tison brothers, however, presented "the intermediate case of the defendant whose participation is major and whose mental state is one of reckless indifference to the value of human life." Id. 107 S.Ct. at 1685. The Court recognized that the majority of American jurisdictions which provide for capital punishment "specifically authorize the death penalty in a felony-murder case where, though the defendant's mental state fell short of intent to kill, the defendant was a major actor in a felony in which he knew death was highly likely to occur," Id. 107 S.Ct. at 1686, and that "substantial participation in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an `intent to kill.'" Id. Commenting that focusing narrowly on the question of intent to kill is an unsatisfactory method of determining culpability, the Court held "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability *266 requirement." Id. 107 S.Ct. at 1688 (footnote omitted).
Tison is applicable to this case because it does not present either of the extremes covered by Enmund; DuBoise was more than a minor actor in the felonies involved here, but he did not actually kill the victim. Therefore, we must determine if DuBoise was a major participant in felonies committed with a reckless indifference to human life which culminated with the victim's death. We find that DuBoise meets these criteria.
In aggravation the trial court found that the homicide occurred during a sexual battery and a robbery. The evidence supports finding that DuBoise participated in both these crimes. DuBoise and his two companions decided to grab a woman's purse in order to get some money. As they passed the victim on the street, DuBoise left their car and attempted to snatch her purse. When she resisted, the other man came to assist DuBoise. The victim recognized one of DuBoise's companions, and the three men put the victim in the car and drove to another area of town. There, while DuBoise raped her, the man whom the victim had recognized struck her with a piece of lumber. DuBoise's companions then raped the woman and both struck her with pieces of lumber.
DuBoise was a major participant in the robbery and sexual battery. He made no effort to interfere with his companions' killing the victim. By his conduct during the entire episode, we find that he exhibited the reckless indifference to human life required by Tison. We hold, therefore, that there were no constitutional impediments to sentencing DuBoise to death.
Although we hold that Enmund did not preclude the trial court from sentencing DuBoise to death, we hold that he should not have done so because DuBoise is correct in his assertion that the court improperly overrode the jury's unanimous recommendation of life imprisonment. In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), this Court stated: "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." We hold that the facts of this case are not so clear and convincing and that reasonable persons could differ regarding the propriety of sentencing DuBoise to death.
Although the court found that no mitigating factors had been established, the jury had been instructed on the statutory mitigating circumstances and had been told that the statutory list was not all inclusive. The jury could have been influenced by one of DuBoise's companions being his older brother, a person who might well have had an influence on this eighteen-year-old defendant's behavior and conduct. Moreover, the two people who actually killed the victim had not been apprehended, leaving DuBoise alone to account for these crimes. The jury also knew that DuBoise has an IQ only of 79 and heard his father's testimony as to DuBoise's deprived family background. We conclude that the trial court should have followed the jury's recommendation.
In summary, we affirm the convictions of first-degree murder and three counts of probation violation. We reverse the trial judge's order granting the motion for arrest of judgment on count two of the indictment charging DuBoise with sexual battery and order that judgment be entered pursuant to the verdict of guilt of attempted sexual battery. We vacate the sentence of death and remand with directions that DuBoise be sentenced to life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
McDONALD, C.J., and OVERTON, BARKETT and KOGAN, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which SHAW and GRIMES, JJ., concur.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur in the judgment of guilt but dissent as to the sentence.
*267 I am of the opinion that Tedder[1] is being grossly misapplied by the majority.
The sentencing scheme devised by the legislature for capital felonies provides that the jury is to render "an advisory sentence to the court" and that "[n]otwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death." §§ 921.141(2), (3), Fla. Stat. (1985). The role of the jury is, in my opinion, a most important one, but it is the trial judge who has the final and awesome responsibility for imposing the ultimate sentence.
The Court, in Tedder, undertook to establish a benchmark, so to speak, by which to determine if the jury's recommendation of life imprisonment should be imposed notwithstanding an override of such recommendation by the Court. Unfortunately, Tedder does not readily provide the bright line guidance that would make it relatively easy to apply.
Ultimately, it is this Court's responsibility to apply the Tedder standard and, as the reported cases will attest, all too frequently there is no unanimity within the Court in the application of this "reasonable person" standard.
The trial court found three aggravating circumstances: 1) the murder was committed during the course of a felony; 2) the murder was committed to avoid arrest; and 3) the murder was especially heinous, atrocious and cruel. The court found no mitigating circumstances, and concluded that death was the appropriate penalty.
In seeking to find an evidentiary underpinning for the "reasonable person" standard of Tedder, the majority points to four areas of testimony by which "the jury could have been influenced": 1) one of the defendant's companions was his older brother, "a person who might well have had an influence on this eighteen-year-old defendant's behavior and conduct;" 2) the other two participants in the crime had not been apprehended and defendant was left alone to account for the crimes; 3) DuBoise has an I.Q. of 79; and 4) he had a deprived family background. At 266. I do not believe this so-called mitigating evidence can be a reasonable basis for a recommendation of life sentence. Tedder cannot be applicable under these circumstances.
In closing argument in the penalty phase, defendant's counsel told the jury that they undoubtedly believed the jail snitch, Butler, in order to convict DuBoise, and that Butler also said DuBoise told him that the others killed the girl. Consequently, since DuBoise did not kill, so counsel argued, the death penalty was not appropriate. The jury deliberated about thirty minutes before returning a recommendation of life imprisonment. It appears to me that the jury was more likely influenced by this argument than it was by the matters speculated on by this Court. The majority's analysis of Enmund[2] and Tison[3] destroys any validity of the argument of defendant's counsel.
I am concerned that in setting aside the trial court's sentence on the basis of speculation and conjecture which the majority has articulated, the majority is in effect saying if any possible reason can be imagined to support the jury's recommendation, this Court should approve it. In so doing, it seems to me that this Court is going counter to what the legislature has provided.
In my view, what this Court did in such cases as Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), and Ferry v. State, 507 So.2d 1373 (Fla. 1987), is a proper, but by no means the only, application of what Tedder seeks to do. What the majority is doing in this case is not, as I view it.
SHAW and GRIMES, JJ., concur.
NOTES
[1] Tedder v. State, 322 So.2d 908 (Fla. 1975).
[2] Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
[3] Tison v. Arizona, ___ U.S. ___, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).