John E. MOORE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8696 & 8697.

Court of Appeals of Alaska.

Sept. 2, 2005.

Robert S. Noreen, Fairbanks, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

This case raises the question of whether the defendant, John E. Moore, consented to have the police search his residence to look for a methamphetamine laboratory. We conclude that, because the troopers obtained Moore's consent by telling him that they had already found a methamphetamine laboratory in a search of a shed in his back yard, and because this search was later determined to be illegal, Moore's consent was tainted by the prior illegal search. We accordingly reverse the trial court's decision denying Moore's motion to suppress.

*Factual and procedural background*

On June 21, 2002, law enforcement officers went to the residence of John E. Moore to provide security for a state social worker who was doing a child welfare check on Moore's daughter. The police were also there to investigate the possibility that Moore had a methamphetamine laboratory at his residence. University of Alaska Police Officer Steven Goetz went to the rear of Moore's residence to provide security. He saw an extension cord which went into an outbuilding. He looked in the outbuilding to see if there was anyone in there. When he looked in the building, he found a methamphetamine laboratory. After making this observation, Officer Goetz walked to the front of the residence to inform Alaska State Trooper Investigator Teague Widmier.

At the same time Officer Goetz was discovering the methamphetamine laboratory, Investigator Widmier knocked on the front door of Moore's residence. When Moore came to the door, the social worker, Yvonne LeClerk, told Moore that they were there to investigate a report she had received about his daughter. Investigator Widmier told Moore that he was with the statewide drug enforcement unit and asked for Moore's iden-

tification. At the social worker's request, John Moore closed the door and retreated back inside to get January Moore, his former wife, and his daughter California.

Investigator Widmier had a tape recorder with him. While the door was closed, Investigator Widmier stated that John Moore's hands were stained with iodine. He also stated on the tape that he smelled something in the house, but the smell was difficult to identify because of other odors.

While the door was closed, Officer Goetz walked to the front porch area and informed Investigator Widmier of the methamphetamine laboratory in the shed. Then, January Moore returned to the door, opened it, and then attempted to close it. But Investigator Widmier used his foot as a block so she could not close the door. Investigator Widmier asked January Moore if drug activity was taking place inside the residence. She responded, "Not that I'm aware of." January Moore left the residence with a child, accompanied by the social worker.

After January Moore left, Investigator Widmier spoke again with John Moore. He informed Moore that he noticed iodine stains on his fingers and that he had detected the smell of a possible methamphetamine laboratory. Moore protested that the stains on his fingers were from nicotine. He explained that he was a heavy smoker. According to the transcript of the tape recording, Investigator Widmier replied as follows:

TW: Nicotine, I don't think so. I investigate Meth Labs, but I know pretty much what iodine is and everything associated with a meth lab, okay? And the smell that's coming out of this residence is possibly associated with a lab. If you want me to come in and look around and make sure that there's not a lab here, I'd, I'd appreciate that, and then you don't have to worry about me buggin' you but I would also like to look around the other property here concerning items associated with a Meth Lab, okay? For my safety and other safety—there's another investigator on the other side of this building right here. *He's already cleared that shed over there and told me there's a Meth Lab in that shed. Is that true?*

JM: *Uh, that is true.*[1]

Investigator Widmier explained that if Moore did not consent, then he would secure the residence and apply for a search warrant. Moore agreed to allow the troopers to search his residence. When they entered the residence the police found that Moore had a methamphetamine laboratory.

The State indicted Moore on three counts of second-degree[2] and one count of fourth-degree misconduct involving a controlled substance.[3] Moore moved to suppress the evidence seized during the search. Superior Court Judge Charles R. Pengilly denied the motion. A jury convicted Moore of all four counts.

On October 20, 2002, while Moore was released on bail before his indictment and conviction on the former charges, the trial court issued a warrant for Moore's arrest. When the troopers went to Moore's residence to arrest him, they again smelled an odor associated with methamphetamine. After Moore consented to a search, the officers found chemicals used in manufacturing methamphetamine and methadone. As a result, the State indicted Moore on three additional counts of second-degree and two counts of fourth-degree misconduct involving a controlled substance. Moore moved to suppress, arguing that the arrest warrant was an illegal fruit of the earlier search which led to the first set of charges. The trial court denied the motion. Moore pled no contest to one count of second-degree misconduct involving a controlled substance, reserving his right to appeal the denial of the second motion to suppress. The remaining four counts were dismissed.

*Moore's consent was tainted by the prior illegal search of the shed*

Judge Pengilly found that Officer Goetz's search of the shed in the back of Moore's residence was an illegal search. Judge Pengilly appears to have concluded that there was no legal basis for the police to go behind Moore's residence to search the shed to ensure officer safety. The State did not contest this finding at the evidentiary hearing and does not contest it on appeal. But the State points out that Judge Pengilly found that the information which Investigator Widmier had (that Moore had iodine on his hands and that there was an odor coming from Moore's house, which suggested a methamphetamine laboratory was present in the residence) was sufficient to give Investigator Wiedmier probable cause. Judge Pengilly found that, at that point, Investigator Widmier could properly inform Moore that the troopers would secure the residence and apply for a search warrant unless Moore consented to allow the troopers to inspect the residence. The State argues that we should uphold Judge Pengilly's ruling.

The problem with Judge Pengilly's ruling and the State's argument is that it completely ignores the effect of the prior illegal search on Moore's consent. When the police obtain the defendant's consent after conducting an illegal search or arrest, the unlawful police action presumptively taints the defendant's related consent to search.[4] In the present case, the police conducted an illegal search, discovering the methamphetamine laboratory in the shed. Investigator Wiedmier confronted Moore with this discovery. In response, Moore admitted that he had a methamphetamine laboratory in the shed. Where the government has conducted an illegal search, the government must demonstrate a break in the "causal connection" between the prior illegality and the defendant's consent.[5] Unless the government can show that the consent is sufficiently insulated

---

1. Emphasis added.

2. AS 11.71.020(a)(4).

3. AS 11.71.040(a)(3)(A).

4. *Norman v. State*, 379 So.2d 643, 646–47 (Fla. 1980); *see also Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963) (holding that the exclusionary rule applies to both physical and verbal evidence obtained either during or as a direct result of an unlawful invasion); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (affirming *Wong Sun* and holding that *Miranda* warnings are not sufficient to break the causal connection between a prior illegal search and/or arrest and a subsequent verbal confession).

5. *United States v. Melendez–Garcia*, 28 F.3d 1046, 1053 (10th Cir.1994); *see also Florida v. Royer*, 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417.

from the prior misconduct, the defendant's consent is considered to be tainted.[6] The State simply has not made any showing that Moore's consent to search was not tainted by the prior police discovery of the methamphetamine laboratory in the shed. The State has not argued any theory to justify the search of Moore's residence other than consent. We accordingly conclude that Judge Pengilly erred in denying Moore's motion to suppress. Since the evidence that the State found as a result of the search was admitted in Moore's trial and the State has not contended that admission of this evidence was harmless, we reverse those convictions.

Moore has not challenged his conviction for misconduct involving a controlled substance in the second degree that arose from the search that occurred on October 20, 2002. Accordingly, this conviction stands.

Moore's convictions in File No. A–8696 are REVERSED. However, Moore's conviction for second-degree controlled substance misconduct in File No. A–8697 is not affected by our decision.

6. *United States v. Taheri,* 648 F.2d 598, 601 (9th Cir.1981).