978 So.2d 862 (2008)
Hewitt GRANT, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-555.
District Court of Appeal of Florida, Second District.
April 9, 2008.
James Marion Moorman, Public Defender, and Dan Hallenberg, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
LaROSE, Judge.
Hewitt Grant appeals his conviction of eighty counts of misdemeanor cruelty to a dog. We have jurisdiction. See Fla. R.App. P. 9.140(b)(1)(A). The trial court sentenced Mr. Grant to 364 days in jail followed by 60 months of probation. He argues that the trial court incorrectly ruled that he voluntarily consented to a search of his property. We agree and reverse.

Facts
Polk County Deputies Wright and Harris went to Mr. Grant's home to investigate a report that more than one hundred dogs were on the property. The deputies had no evidence suggesting that any dogs were mistreated. When no one answered the door, the deputies peered over and through the slats of a six-foot privacy fence. They saw only some chained or caged dogs. Then, the deputies walked through a gate and searched the property. They found more than a hundred dogs chained to kennels. Most of the dogs were emaciated and had no food or water. Many had scars.
The deputies left the property and called for backup. A neighbor told them that Mr. Grant was on his way home. When Mr. Grant arrived, Deputy Wright told him that the deputies had searched his property and asked him to show them around to explain the dogs' conditions. Mr. Grant agreed and escorted the deputies around his property. He refused to allow a search of his house. The deputies thereafter obtained a search warrant and found mistreated dogs and other evidence inside. They arrested Mr. Grant for animal cruelty.
Mr. Grant filed an unsuccessful motion to suppress. The trial court concluded that although the State failed to demonstrate that the deputies entered the property lawfully under the plain view doctrine or because of exigent circumstances, the search was lawful because of Mr. Grant's consent and the inevitable discovery rule.

Analysis
We agree with the trial court that the plain view doctrine is inapplicable. See State v. Morsman, 394 So.2d 408, 409 (Fla. 1981) (holding plain view doctrine did not apply to search and seizure of marijuana in back yard where marijuana was not visible until police entered enclosed yard without warrant). We also agree that no exigent circumstances justified the warrantless intrusion into Mr. Grant's property.
We cannot agree, however, that the illegality of the deputies' initial search was cured by Mr. Grant's subsequent consent to show them around his property. The illegal search prior to Mr. Grant's arrival tainted the consent and rendered the evidence inadmissible as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Wheeler v. State, 956 So.2d 517, 518-19, 522 (Fla. 2d DCA 2007). The trial court's twin rationale for finding a valid consent cannot stand. Principally, the trial court reasoned that, because Mr. *864 Grant refused to allow a search of his house, he knew that he could refuse consent for a search of his property. Of course, the deputies had already searched the property, thus demonstrating to Mr. Grant that they had an absolute right to search and that his "consent" to any further search was a mere formality which he could not refuse. See Gonzalez v. State, 578 So.2d 729, 733-34 (Fla. 3d DCA 1991). Under the circumstances before us, Mr. Grant could only conclude that refusing consent would be "a futile gesture amounting to no more than `closing the barn door after the horse is out.'" United States v. Chambers, 395 F.3d 563, 570 (6th Cir. 2005); United States v. Gamez, 389 F.Supp.2d 975, 982 (S.D.Ohio 2005); see also Norman v. State, 379 So.2d 643, 648 (Fla.1980) (holding consent knowing sheriff had already seen marijuana in prior illegal search was acquiescence to authority).
Norman amply supports Mr. Grant's position. See 379 So.2d 643. There, the sheriff visited defendant's farm on a tip that marijuana was stored in the barn. Id. at 645. Finding the gate locked, he climbed over the fence to get to the barn and, looking through a window with the aid of a flashlight, saw marijuana inside. Id. He returned to his office and had the farm watched. Id. A deputy stopped defendant three days later outside the farm. He told defendant that the sheriff had seen the marijuana. Id. He asked if they could go back to the barn to verify that it was still there. Id. Defendant agreed. Id. The supreme court held that any consent to the deputy's request to view marijuana already found in the warrantless search was "fatally infected by the illegal intrusion." Id. at 646; see also State v. Kelley, 491 So.2d 1162, 1163-64 (Fla. 2d DCA 1986). Based on the record before us, Norman compels the conclusion that Mr. Grant's consent did not validate the initial illegal search.
The trial court's second rationale for ruling that the consent was valid was its finding of an unequivocal break in the chain of illegality between the initial search and Mr. Grant's subsequent consent that dissipated the taint of unlawful police action. See Norman, 379 So.2d at 647. The "unequivocal break" principle requires us to ask "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 488, 83 S.Ct. 407 (1963) (quoting Maguire, Evidence of Guilt, 221 (1959)); see also State v. Frierson, 926 So.2d 1139, 1143, 1150 (Fla.2006). Here, the State failed to clearly and convincingly show that the evidence seized following Mr. Grant's consent was not obtained by exploiting what they discovered during the prior search. See Wong Sun, 371 U.S. at 488, 83 S.Ct. 407.
Any evidence that the deputies later found in Mr. Grant's house after securing a warrant was also tainted because they obtained the warrant based on evidence found during the illegal search of his property. See State v. Thomas, 405 So.2d 462, 463 (Fla. 3d DCA 1981) (holding evidence found pursuant to warrant based on probable cause provided by prior illegal entry was inadmissible as fruit of the poisonous tree).
Finally, we cannot agree that the evidence was admissible under the inevitable discovery doctrine. See State v. Duggins, 691 So.2d 566, 568 (Fla. 2d DCA 1997). The doctrine requires that "the case . . . be in such a posture that the facts already in the possession of the police would have led to this evidence notwithstanding the police misconduct. . . ." Moody v. State, 842 So.2d 754, 759 (Fla. 2003). "`[I]nevitable discovery involves no *865 speculative elements. . . .'" Id. (quoting Nix v. Williams, 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). In this case, the deputies lacked any basis to secure a warrant absent their observations after they entered the property. Any assertion that they would have discovered evidence of animal cruelty absent the illegal conduct is speculative.
Reversed.
SALCINES and KELLY, JJ., Concur.