MARSTILLER, J.
Appellee, Steven Kite, was charged by Second Amended Information with one count of Conspiracy to Traffic in Methamphetamine ' and one count of Unlawful Possession of a Listed Chemical — pseu-doephedrine, both of which allegedly occurred between December 18, 2010, and April 18, 2013. A jury found Kite guilty of both crimes. ■ However, Kite moved for, and obtained, a judgment of acquittal (“JOA”) on the conspiracy to traffic count. The trial judge cited two grounds for granting the JOA: first, that the Amended Information was' inaccurately worded and failed to actually charge Kite with conspiracy to traffic; and second, that the State failed to prove an agreement, between Kite and any other person to purchase and deliver between 28 and 200 grams of pseudoephedrine. Finding both reasons incorrect, we reverse the JOA and direct the trial court to reinstate the jury’s guilty verdict.
The State brought the trafficking charge under sections 893.135(l)(f)l.b., and 893.135(5), Florida Statutes (2012), which provide:
(f)l. Any person who knowingly sells, purchases, manufactures, -' delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of amphetamine, as described in s. 893.03(2)(c)2., or methamphetamine, as' described in s. 893.03(2)(c)4., or of any mixture containing amphetamine or methamphetamine, or phenylacetone, phenylacetic acid, .pseudoephedrine, or- ephedrine in conjunction with other chemicals • and equipment utilized in the manufacture of amphetamine or methamphetamine, commits a felony of the first degree, which felony shall be known as “trafficking in amphetamine,”— If the quantity involved:
*100 [[Image here]]
b. Is 28 grams or more, but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 7 years, and the defendant shall be ordered to pay a fine of $100,000.
[[Image here]]
(5) Any person who agrees, conspires, combines, or confederates with another person to commit any act prohibited by subsection (1) commits a felony "of the first degree and is punishable as if he or she had actually committed such prohibited act.
Count 1 of the Amended Information charged Kite with -
unlawfully - and knowingly agreeing], conspiring], combining], or confeder-at[ing] with another person or persons to-wit: 1 Stephanie Gunderson or Heather Harris or Sylvia Rutherford or Josejph Peterson, or all of them, or others unknown to your affiant, to knowingly sell, purchase, manufacture, deliver, bring into this state, or possess, 28 grams or more, but less than 200 grams, of any mixture containing pseudoephedrine, in conjunction with other chemicals and equipment utilized in the. manufacture of methamphetamine, in violation of Sections 893.135(l)(f)l.b., 893.135(5), and 777.04(3), Florida Statutes.
(Emphasis in original.)
Granting Kite’s motion for JOA, the trial court concluded that, because of the ■ way the Amended Information was worded — “any mixture containing pseu-doephedrine, in conjunction with other chemicals and equipment ...” — the jury had convicted Kite of “something that’s not- a crime.” Specifically, the court read section 893.135(l)(f)l.b.' to prohibit the sale, purchase; • manufacture, possession, etc., of 28 to 200 grams of (1) amphetamine; (2) methamphetamine; (3) any mixture containing amphetamine or methamphetamine; or (4) phenylacetone, phe-nylacetic acid, pseudoephedrine or ephedrine in conjunction with other chemicals or equipment used to make amphetamine or methamphetamine. The statute does not outlaw, according to the court, the sale, purchase, manufacture, possession, etc., of 28 to 200 grams of any mixture containing pseudoephedrine, in conjunction with other chemicals and equipment used to make amphetamine or methamphetamine, as charged in the' Amended Information.
Although the trial judge may have had a point about the way the charging document was worded, the purported defect was not fatal because the correct statutory provisions were cited, thereby putting Kite on notice of the crime he was charged with and prosecuted for. See Baker v. State, 4. So.3d 758, 761 (Fla. 1st DCA 2009) (“[E]ven if a charging document omits entirely one or more essential elements of the crime intended to be charged, it may still withstand challenge if it ‘references a specific section of the criminal code which sufficiently detail's all the elements of the offense.’ ”) (quoting DuBoise v. State, 520 So.2d 260, 265 (Fla.1988)). Moreover, the State’s evidence against Kite established that he made multiple drugstore purchases of pseudoephedrine which, if the requisite quantity also was proven, would permit conviction under section 893.135(1)(f)1.
Indeed, the State did put forth sufficient evidence for the jury to find Kite conspired with others to traffic in amphetamine by buying and delivering, over a period of time, packages of pseudoephed-rine. To obtain a conviction for conspiracy to traffic in illegal drugs under sections 893.135(l)(f)l.b. and 893.135(5), the State must prove — and may do so with circumstantial evidence — an express or implied *101 agreement or understanding between two or more people to purchase/sell/deliver/manufacture/etc. the proscribed quantity. See McClain v. State, 709 So.2d 136, 137 (Fla. 1st DCA 1998); Spera v. State, 666 So.2d 550, 551 (Fla. 2d DCA 1995); Voto v. State, 509 So.2d 1291, 1293 (Fla. 4th DCA 1987). Here, the State’s evidence showed that between December 18, 2010, and April 18, 2013, Kite made 53 purchases of pseudoephedrine, totaling 123.94 grams, from various pharmacies. The evidence also showed that during the same period, Kite would deliver packages of pseudoephedrine to the home of one Joseph Peterson, a known methamphetamine “cook,” and received half a gram of methamphetamine each time in return. Two witnesses, one of whom was Peterson’s live-in girlfriend, testified that Peterson hired several people as “smurfs”..to buy pseudoephedrine for him. They testified they were part of the conspiracy to buy and deliver pseudoephedrine to-Peterson, Kite was one of Peterson’s “smurfs,” and they saw Kite regularly delivering pseudoephedrine to. Peterson’s home where it was evident, from the ever-present strong chemical odor and refuse from the manufacturing process, that methamphetamine was being made there. During the period at issue, Peterson changed residences two or three times but continued to make methamphetamine; Kite delivered pseudoephedrine to Peterson at the new addresses, as well. Viewing this evidence and permissible inferences in, a light most favorable to the State, see generally Kish v. State, 145 So.3d 225, 227 (Fla. 1st DCA 2014), we conclude the State presented sufficient evidence of an ongoing relationship between Kite and Peterson involving Kite’s repeated purchases and deliveries of pseudoephedrine to Peterson, allowing the jury to properly infer there was a conspiracy between the two men specifically for the purchase and 'delivery of 28 grams or more of pseudoephedrine to be used to manufacture methamphetamine. See United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir.1999) (stating that agreement may be reasonably inferred from ongoing relationship or continued course of conduct bétween individuals 'resulting'in repeated transfer of illegal drugs).
The trial court misplaced reliance on Pallin v. State, 965 So.2d 1226 (Fla. 1st DCA 2007), to support its conclusion the State failed to establish a specific agreement for the purchase and delivery of 28 - grams or more of pseudoephedrine. In Pallin, we held the State failed to prove conspiracy to traffic in cocaine because, even though there was evidence the defendant had made several purchases of cocaine from two suppliers over an 11-month period, the evidence did not establish a specific agreement to purchase more than 28 grams of cocaine. Id. at 1226. In the present case, there is testimony establishing existence of a conspiracy in which Peterson, a methamphetamine manufacturer, used other people to buy him pseu-doephedrine, an ingredient in methamphetamine; and evidence of a years-long continuing relationship between Kite and Péterson in which Kite bought 123.94 grams of pseudoephedrine and delivered it to Peterson, receiving methamphetamine in payment. The two cases could hardly be more different.
For the reasons explained above, we agree with the State that the trial court erred in granting a post-verdict JOA on the conspiracy charge. Accordingly, we reverse the JOA with directions to the trial court to reinstate the jury guilty verdict on that charge.
REVERSED and REMANDED.
WOLF and SWANSON, JJ., concur.